## GURDON MILLER *v.* THE EAGLE LIFE AND HEALTH INSURANCE COMPANY.

In an action upon a policy of insurance upon the life of B., whereby the defendants agreed to pay to A. (the plaintiff) $1,000, within sixty days after notice and proof of the death of B.; *held*, that the defendants, having, upon receiving the preliminary proofs, placed their refusal to pay on the ground that there was no sufficient proof of the particulars of the plaintiff's *interest*, and having suffered the sixty days to elapse without any objection to the sufficiency of proof of *death*, had waived further proof of death, or admitted the sufficiency of that already furnished, and that after the sixty days, it was too late to raise that objection.

No *preliminary* proof of *interest* is necessary, before suit brought upon such a policy; there being no condition therein that *such* preliminary proof shall be furnished.

Where A. entered into an agreement with B., that the former would furnish money for B.'s outfit, &c.; that the latter should go to California; and that A. should be entitled to one half of the net profits to arise from gold digging and other employments wherein B. should engage for the period of two years; *held*, that A. had an insurable interest in the life of B.

Under such circumstances, a policy of insurance, made in good faith, wherein it is agreed that A. shall be paid $1,000 upon notice and proof of the death of B., is not a wager, but a valid, binding contract; and the *amount insured* is the measure of recovery thereon in case of loss.

A policy upon a life is in its *nature* an insurance upon the benefits which will or may result to the assured, from the continuance of the life; and in that respect is like an insurance upon profits.

But it is not necessary, in a case like that above stated, that the policy should disclose the interest of the assured, or should declare in terms that it is to *secure* to the assured the anticipated proceeds of the enterprise out of which his interest results.

One who is jointly interested with another, as partner or otherwise, may insure himself, and recover to the extent of his own separate loss.

Where the value of the interest of the plaintiff in the life insured is altogether contingent and uncertain, incapable of being ascertained or proved, by reason of the very death insured against, and yet it appears that the loss may have greatly exceeded or may have fallen short of the sum insured; that sum is to be taken as the *prima facie* measure of recovery.

And hence, *held*, that A., in the case above stated, was not bound to prove, on the trial, that the one half of the proceeds of the labor and industry of B., in gold digging or otherwise, would have amounted, had he lived, to the sum of $1,000.

*It seems*, that an insurance upon life is, in its nature, a " valued policy."

Miller *v.* The Eagle Life and Health Insurance Company.

The sufficiency of preliminary proofs to satisfy conditions precedent in a policy of insurance, and what facts amount to a waiver of such proofs, are questions of law to be decided by the court. But whether such proofs were furnished, and whether the acts were done, which constitute the alleged waiver, are questions of fact for the jury.

Where the assured has a clear legal title to any pecuniary benefit arising from the continuance of the life of the insured, the insurance is valid as an indemnity against the loss of such benefit.

Nor is it necessary that the benefit should be inevitable or certain to result from the continuance of the life.

*It seems,* that an equitable title or interest may be protected by such insurance.

The phraseology of the English statute relating to insurance compared with that of the state of New York.

It is no ground for the reversal of a judgment, that a question which ought to have been determined by the court, has been submitted to the jury, where, in the opinion of the appellate tribunal, the court must have decided as the jury in fact found.

On the 23d of May, 1849, the plaintiff and one Ralph H. Miller, entered into a written agreement, of which the following is a copy :

"This agreement, made this twenty-third day of May, 1849, witnesseth, that Ralph H. Miller, of the town of Waterford, and state of Connecticut, being on the eve of departure for San Francisco, California, and wanting funds to pay his way there, Gurdon Miller, of the city of Brooklyn, having advanced the necessary funds for outfit and all other needful purposes, it is hereby agreed, by and between the said Ralph H. Miller and the said Gurdon Miller, that the net profits arising from the enterprise now about being commenced, shall be equally divided between them, share and share alike.

" It is further agreed and understood, that this agreement is intended to cover the space of two years from this date, and to entitle the said Gurdon Miller to one half the profits on goods taken out, or hereafter to be sent out ; and also one half of all profits to arise from gold diggings and any other employment or business which the said Ralph H. Miller shall engage in, for the above named period of two years. Witness our hands and seals," &c.

The plaintiff advanced to Ralph H. Miller money to an amount considerably exceeding one thousand dollars, for his outfit and for merchandise.

On the day the agreement was signed, the defendants, an insurance company incorporated in the state of New Jersey, and having an agency in the city of New York, issued a policy, whereby, after reciting that the plaintiff had applied for insurance upon the life of R. H. Miller, and had paid $39, as the premium for one year, the defendants agreed with the plaintiff to pay to him $1,000 "within sixty days after due notice and proof of the death of said Ralph," with conditions that if the latter should die upon the seas, or pass, without the company's consent, beyond certain limits, enter into any naval or military service, die in or by reason of the violation of any law, or if any misrepresentations had been made in the application for the insurance, then, in either of those events, the policy should be void; otherwise to continue three years, upon payment of the premiums.

The plaintiff paid the first year's premium; and a consent having been endorsed on the policy, R. H. Miller went, forthwith, to California, where he died of an ordinary disease, in the autumn of the same year.

The plaintiff, in April, 1850, received intelligence of the death, and the next day gave a written notice thereof to the company. On the 16th of May, he enclosed to them an affidavit of W. C. Strobridge, to the effect that the latter had received a letter from J. M. Strobridge, the deponent's brother, written and dated at different times, and stating, under a particular date, the death of a young man by the name of Ralph Miller, of Connecticut, who had accompanied the writer to the mines, and the letter requested the communication of a message to his mother. To this affidavit the plaintiff attached his own, deposing that R. H. M. started from New York with Strobridge, and was the identical person mentioned by the latter, adding that his, plaintiff's, "interest in the life and services of the said R. H. M., was for two years from May 23, 1849."

The company's agent in New York replied in writing, under date of May, 18: "We received your affidavit, and that of Mr. Strobridge, respecting death of R. H. Miller. "You have omitted to furnish a statement of the interest in the life. Please furnish that with particulars, and as soon as received, I will lay the papers before the board for their action."

The plaintiff then sent to the company a copy of the agreement with R. H. Miller. In a letter acknowledging its receipt, the agent wrote: "This document only shows the agreement you had with R. H. Miller. What we require is, to know what amount you advanced under this agreement, and what amount, if any, has been returned to you, or if there is any thing expected, or in other words, we want a statement of R. H. Miller's indebtedness to you. "As soon as you furnish these papers, we will lay them before the board or the committee on claims and losses, and have them acted on as promptly as possible."

An additional affidavit was thereupon made by the plaintiff, stating that when Ralph sailed, he furnished him with an invoice amount exceeding $1,000 of specie and merchandise, and afterwards sent upwards of $200 in value more; that nothing had been returned or realized, and no account of sales or proceeds received; and that, in his opinion, he had lost, in the services, earnings, and profits of R. H. M., upwards of $1,000. The plaintiff sent this affidavit to the agency, in a letter, expressing his surprise at the delay in payment, and explaining that it was not his intention to acknowledge the company's right to limit their liability to the amount of advances, if the latter had been less than the amount of the policy.

The agent answered, insisting that the plaintiff must furnish "a particular statement of interest at the time of death of party insured," and illustrating, at length, his position that the plaintiff's recovery must be limited to his pecuniary interest in the life of the decedent at the time of the death, without regard to the amount named in the policy.

The correspondence was closed by a letter from the plaintiff, dated June 4th. This action was brought upon the policy, July 22d.

The defendants interposed a demurrer to the complaint, which was not sustained, as appears by the following opinion, delivered at special term:

"The defendants demur to the complaint: "1. Because there was not due proof of death furnished to the company. "Whether the proof was sufficient or not, if it had been objected to, is not a material question in this cause. "The plaintiff sets out the preliminary proof he furnished to the defendants, and alleges that the company have given no notice that further proof was required, and that more than sixty days had expired before suit, and before demand of payment. "The proof required is not strict proof, but the best the insured can obtain. (3 J. C. 224; 4 J. R. 131.) "Unless the insurer object to the preliminary proofs, on the ground of their insufficiency, they will be considered sufficient. (25 Wend. 379; 16 Ib. 385; 23 Ib. 525.) "This rule is, I think, applicable to this case, and as the defendants, by their demurrer, admit that no objection was made to the proof, it is now too late to make it.

"2. The complaint avers that sixty days had expired before demand of payment on the company, which is admitted by the demurrer.

"3. The demurrer objects that it does not appear that the plaintiff had an insurable interest in the life of the person insured. "The affidavits served on the company show an insurable interest. "The plaintiff agreed to advance money and goods to the deceased, and the affidavits show that he had advanced an outfit. "How it was to be paid is not material to the question. "The plaintiff alleges that his interest in the life of the deceased exceeded $1,000. "How much his interest was, is not the question; but had he any interest in the life of the deceased? "The advance of an outfit, which has not been repaid, was such an interest. "The advance of specie was likewise. "Both items show

Miller *v.* The Eagle Life and Health Insurance Company.

an insurable interest, free from the objection of a partnership, profits, or wagering policy, which the defendants make to the plaintiff's claim.

" Upon all these points the defendants, in their answer, can take issue ; but I think the complaint shows a good cause of action against the defendants, and that the demurrer is not well taken."

The defendants having leave to answer, took issue upon all the material facts in the case.

The cause was tried before DALY, J., and a jury. The facts and correspondence above related were put in evidence, and it was proved that the letter received by W. C. Strobridge, from his brother, was written as represented in the affidavit used in the preliminary proofs.

When the plaintiff rested, the defendants moved to dismiss the complaint, on the grounds :

1st. That proper and sufficient preliminary proof of the death of Ralph Hurlbut Miller was not made or furnished to the defendants before the commencement of this action, said action being prematurely brought.

2d. That proper reasonable and sufficient preliminary proof of the plaintiff's actual pecuniary interest in the life of Ralph Hurlbut Miller, was not made or furnished to the defendants before the commencement of this action, said action being prematurely brought for that reason.

3d. That the plaintiff's interest in the life of Ralph H. Miller, as appears by the preliminary proof furnished to the defendants, was one half of the net profits arising from the sale of goods, from gold diggings, or otherwise. That no such profits have been shown, either by said preliminary proof or on this trial, to have been made.

4th. That Gurdon Miller had no insurable interest in the life of Ralph H. Miller at the time the policy here in question was issued, nor at the time of his death. That no subsequent circumstances could make that a good policy which was at first void. That profits are not an insurable interest, or if they are, they should have been specially insured as such.

5th. That this was a wagering policy, and therefore void.

6th. That no such proof of interest has been shown as will entitle the plaintiff to recover.

The judge denied the motion, saying, in respect to the first point, that the defendants, having received the letter without objection, or without demanding any further proof of the death of Ralph H. Miller, had waived all objections on that ground to the sufficiency of the preliminary proof.

The defendants excepted.

The defendants then called their general agent for New York, who testified, that in July, 1850, before the commencement of this suit, the witness told the plaintiff, upon the latter calling to demand payment, that there was no sufficient proof of the death, and that this insufficiency was discovered by the witness upon looking at the papers after the plaintiff wrote to close the correspondence. This testimony was corroborated by a witness, who testified, that at the interview in question, the agent objected to the character of the proof both of death and interest; but another witness testified that he had heard the whole conversation, and that no objection was made to the evidence of the death.

The judge submitted to the jury, as questions of fact to be determined by them, 1. Whether further preliminary proof of the death of R. H. Miller had been required by the defendants; 2. Whether the defendants had not waived any further preliminary proof of the death of R. H. Miller. The court instructed the jury, that if either of the questions were decided in the defendants' favor, the action had been prematurely brought, and they were entitled to a verdict; and that if, on the contrary, the jury found for the plaintiff, he would be entitled to recover the whole amount mentioned in the policy.

The defendants excepted, insisting that the question of waiver, above stated, was, upon the proofs, a question of law for the determination of the court, and that the plaintiff's recovery, if any, should be limited to the amount of his actual pecuniary interest in the life of R. H. Miller.

The jury returned a verdict in favor of the plaintiff, for the amount stated in the policy, and interest.

The defendants moved, at special term, upon a case made, for a new trial. By consent, an order was entered, *pro forma*, denying the motion for a new trial; and from that order the defendants appealed to the general term, where the order denying the motion for a new trial was affirmed. Subsequently, on appeal from the final judgment at special term, such judgment was also affirmed. The opinion of the general term, delivered by WOODRUFF, J., on the appeal from the order denying a new trial, was adopted as the opinion of the court, on affirming the judgment.

*Robert C. Embree* and *Walter Rutherford*, for the defendants, made and argued the following points :

I. The complaint should have been dismissed at the close of the plaintiff's case. Because,

1st. The plaintiff did not show affirmatively that proper, reasonable, and sufficient preliminary proof of the *death* of Ralph H. Miller was made or furnished to the defendants before the commencement of this action. (*Columbian Insurance Company* v. *Lawrence*, 2 Peters, 48, 49, 50, 51, 53; *Murdock* v. *Chenango Insurance Company*, 2 Comst. 216, 222, and cases cited.)

2d. The plaintiff did not show affirmatively that proper, reasonable and sufficient preliminary proof of his *interest* in the life of Ralph H. Miller was made or furnished to the defendants before the commencement of this action. (*Columbian Insurance Company* v. *Lawrence*, 2 Peters, 48, 49, 50, 51 and 53; *Murdock* v. *Chenango Insurance Company*, 2 Comst. 216, 222, and cases cited; *Lynch* v. *Dazell*, 4 Brown's P. C. 431; *Niblo* v. *North American Insurance Company*, 1 Sand. 556; 3 Kent, 367, etc.; *Prichet* v. *Insurance Company of North America*, 3 Yeates, 458; *Alsop* v. *The Commercial Insurance Company*, 1 Sumner, 467; *Abbot* v. *Sebor*, 3 J. C. 49; *Hodgson* v. *Glover*, 6 East, 315; *Kent* v. *Bird*, Cowp. 583; *Forbes* v. *Aspinwall*, 13 East, 322.)

3d. The plaintiff, by the papers furnished by him as preliminary proof to the defendants, seeks or attempts to show that his *interest* in the life of Ralph was to one *half* of the net *profits* arising from the *sale of goods*, from proceeds of gold digging or otherwise; which *interest* (if any) was *not insured* by the policy sued on. And further, such proofs do not show any such profits to have accrued, but to the contrary, so that Ralph was at no time his debtor, so as to give the plaintiff an interest under the policy. (*Columbian Insurance Company* v. *Lawrence*, 2 Peters, 47, 48, 49 and 50; *Graves* v. *Boston Marine Insurance Company*, 2 Cranch, 440; *Murdock* v. *Chenango Insurance Company*, 2 Comst. 217, 222; *Alsop* v. *The Commercial Insurance Company*, 1 Sumner, 467; *Niblo* v. *North American Insurance Company*, 1 Sand. 556, 557; *Kent* v. *Bird*, Cowp. 583.)

4th. The plaintiff had no insurable interest in the life of Ralph at the time the policy was issued, nor at the time of his death. No after circumstances could make that a good policy which was at first void. (*Columbian Insurance Company* v. *Lawrence*, 2 Peters, 47, 48, 49 and 50; *Graves* v. *Boston Marine Insurance Company*, 2 Cranch, 440; 1 Rev. Stat. 3d ed. 662; 3 Kent, 367; *Prichet* v. *Insurance Company of North America*, 3 Yeates, 458; *Alsop* v. *The Commercial Insurance Company*, 1 Sumner, 467.)

5th. Profits must be specially insured as profits. (*Niblo* v. *North American Insurance Company*, 1 Sand. 567, and cases cited; 1st Phillips on Insurance, 122, 191; *Tom* v. *Smith*, 3 Caines, 249. No case is reported where profits were recovered without having been specially insured.)

6th. This was a wagering policy, and therefore void; the relation of debtor and creditor not existing between the plaintiff and Ralph at the time of issuing the policy or at any other time. (1st Rev. Stat. 3d ed. 662; Duer on Insurance, 92, 94, 95; *Alsop* v. *The Commercial Insurance Company*, 1 Sumner, 465, and cases cited; *Amory* v. *Gilman*, 2 Mass. R. 1; 3 Kent, 367; Marshall on Insurance, 80.)

II. The judge erred in denying the motion to dismiss the

complaint on the close of the plaintiff's case, on the ground that "the defendants having received the letters without objection, or without demanding any further proof of the death of Ralph H. Miller, had waived all objections on that ground to the sufficiency of the preliminary proof." Because,

1st. There is no principle, usage or rule requiring such objection to be made. The plaintiff must furnish good legal evidence as preliminary proof. (*Columbian Insurance Company* v. *Lawrence*, 2 Peters, 53, 54 and 57.)

2d. Where there are two objections or two different points of evidence for consideration, (as in this case, *death* and *interest*,) and the insurers are engaged in the consideration of one point, it is no waiver of further proof on the other point that the objection thereto is not raised until after the proof is made satisfactory in the first. (*Columbian Insurance Company* v. *Lawrence*, 2 Peters, 50, 53.)

III. The plaintiff in this *trial* has not shown any such *interest*, in the life of Ralph H. Miller, as will entitle him to recover; the plaintiff intending to insure services, earnings, profits and gains under the partnership agreement, which was unknown to the defendants; and the defendants insuring only his actual pecuniary interests as a creditor. There was no contract. (See Agreement and Affidavit; *Columbian Insurance Company* v. *Lawrence*, 2 Peters, 47, 48, 49, 50; *Graves* v. *Boston Marine Insurance Company*, 2 Cranch, 440; 1st Rev. Stat. 3d ed. 662; Duer on Insurance, 92, 94 and 95; no contract, p. 67; 3 Kent, 367; *Alsop* v. *The Commercial Insurance Company*, 1 Sumner, 467; *Niblo* v. *North American Fire Insurance Company*, 1 Sand. 557.)

IV. The judge erred in submitting to the jury, for them to pass upon, the question, "whether the defendants had not waived any further preliminary proof of the death of Ralph H. Miller." The question of waiver was one for the judge to decide, under the circumstances and evidence, and with which the jury had nothing to do. That question, being as to the competency of evidence, was a question of law to be decided by the court. (Graham's Practice, 2d ed. 290;

*Columbian Insurance Company* v. *Lawrence*, 2 Peters, 52, 54.)

V. The judge erred in charging the jury "that the plain- tiff is entitled to recover, if at all, the whole amount, as stated in the policy;" because the policy is not valued as claimed by the plaintiff, and in effect charged by the judge; and the proofs do not show, of all the money and goods fur- nished to Ralph by the plaintiff under their partnership agree- ment, a disposition in any way of more than eighty dollars, paid for passage money. The balance, both of money and goods, is not accounted for. (3 Kent, 367, and notes; 1 Rev. Stat. 3d ed. 662; Duer on Ins. 92, 93, 95; *Prichet* v. *Insurance Company of North America*, 3 Yeates, 458; *Goodsall* v. *Boldero*, 9 East, 81; *Bainbridge* v. *Neilson*, 10 East, 344; *Tunno* v. *Edwards*, 12 East, 493; *Lynch* v. *Dazell*, 4 Brown P. C. 431; *Sadler's Company* v. *Badcock and others*, 2 Atk. 554, May 9, 1743; *Alsop* v. *The Com- mercial Insurance Company*, 1 Sumner, 467; *Tyler* v. *Ætna Insurance Company*, 12 Wend. 513; *Abbot* v. *Sebor*, 3 J. C. 49; *Lavrent* v. *Chatham Insurance Company*, 1 Hall's Rep. 45, 47, 48; *Hodgson* v. *Glover*, 6 East, 315; *Kent* v. *Bird*, Cowp. 583; *Forbes* v. *Aspinwall*, 13 East, 322.)

VI. The verdict of the jury, under the charge of the judge, was clearly contrary to evidence; because, 1st. They found for the plaintiff upon the principal question presented to them for their consideration, viz., "whether further pre- liminary proof of the death of Ralph H. Miller was required by the defendants?" Whereas Joseph W. Savage, a wit- ness on the part of the defendants, and their general agent at the time, swears positively that he *did* require further preliminary proof of Ralph's death; and William S. Slocum, defendants' book-keeper, swears positively that he heard Mr. Savage notify the plaintiff that his proofs were insufficient. Both Mr. Savage and Mr. Slocum are unimpeached, and there is no testimony whatever rebutting theirs. 2d. If proper for the jury to find any thing for the plaintiff, they should only have found for the sum of $80, the whole

amount accounted for as spent by Ralph. The balance of money and the goods being unaccounted for are probably now in California, subject to the order of the plaintiff; at any rate, no proof was produced of their loss, or of any search for them, diligent or otherwise. (1 Duer on Ins. 92, 94; *Sadler's Company* v. *Badcock and others*, 2 Atk. 554, May 9, 1743; 3 Kent, 367; *Prichet* v. *Insurance Company of North America*, 3 Yeates, 458; *Alsop* v. *The Commercial Insurance Company*, 1 Sumner, 467; *Abbot* v. *Sebor*, 3 J. C. 49; *Forbes* v. *Aspinwall*, 13 East, 322; *Niblo* v. *North American Insurance Company*, 1 Sand. 556, 557, &c.; *Tyler* v. *Ætna Insurance Company*, 12 Wend. 513.)

VII. It is not the business of a life insurance company to insure *goods* and *profits;* they merely, in a case like the present, insure the life of a *debtor.* It now appears, by the proofs, that at no time did the relation of debtor and creditor exist between Ralph and the plaintiff, and there was, therefore, no contract between the parties to this action.

The defendants were deceived and misled, and would be injured by allowing a recovery under this policy; because, under the partnership agreement, the plaintiff has no claim on Ralph's estate. Whereas, if Ralph had been his debtor, he would have had a claim against it, and any receipt therefrom would have been an *ademption* of his claim, in whole or *pro tanto.* Hughes on Insurance, (Life,) 379; *Goodsall* v. *Boldero*, 9 East, 72; *Bainbridge* v. *Neilson*, 10 East, 344; 3 Kent, 367; *Tyler* v. *Ætna Insurance Company*, 12 Wend. 513; *Ely* v. *Hallet*, 2 Caines, 57.)

VIII. If the insurance had been on the whole of the goods, and the policy *valued* in *terms*, the insured, under his partnership agreement, could only have recovered one half the amount insured, at the outside. (*Murray* v. *The Columbian Insurance Company*, 11 J. R. 313; *Hodgson* v. *Glover*, 6 East, 315; *Lawrence* v. *Sebor*, 2 Caines, 203; *Tyler* v. *Ætna Insurance Company*, 12 Wend. 513; *Kent* v. *Bird*, Cowp. 583; *Forbes* v. *Aspinwall*, 13 East, 322.)

*Samuel F. Clarkson*, for the plaintiff, made and argued the following points:

I. As to the defendants' grounds for moving to dismiss the complaint, that motion was properly denied.

1. Strict legal proof was not necessary; the law requires only the best proof the plaintiff can give. (*Lenox* v. *United Insurance Company*, 3 Johns. Cas. 224; 4 Johns. R. 131; *McLaughlin* v. *Washington Insurance Company*, 23 Wend. 525, 527; 7 Cowen, 645; *Lawrence* v. *Ocean Insurance Company*, 11 Johns. R. 241.) A *copy* of a letter from the master was held sufficient preliminary proof.

2. The defendants, by letters of 18th May, 1850, and May 23d and 30th, 1850, required the plaintiff to furnish a statement *of the amount of his interest, and thereby waived further proof of the death of R. H. Miller.* (*Francis* v. *Ocean Insurance Company*, 6 Cowen, 404; 11 Wend. 64; *Voss* v. *Robinson*, 9 Johns. R. 192, and the cases there cited; 2 Greenleaf on Evidence, 320, § 394.) "Whatever be the nature of the preliminary proof, if the underwriter does not object to its sufficiency *at the time it is exhibited*, but refuses to pay the loss, on some specified ground, the objection of insufficiency in the proof is waived." (*Ætna Fire Insurance Co.* v. *Tyler*, 16 Wend. 386, note, and 401–2; *McMasters* v. *The Westchester Mutual Insurance Company*, 25 Wend. 379.)

3. The court decided this question on the defendants' demurrer, and the opinion thereon meets also the other questions of the defendants, upon the motion for a new trial.

The 2d, 3d, 4th, 5th and 6th grounds for the motion taken by the defendants all relate to the amount of the plaintiff's interest, and may be taken and considered together.

1. The policy does not require preliminary proof of the amount of the plaintiff's pecuniary interest in the life of the deceased. The contract is to be construed, as made by the parties, according to its terms. (*Hall* v. *Newcomb*, 7 Hill, 416; *Spies* v. *Gilmore*, 1 Comst. 321, 324; 6 Barb. Sup. Ct. R. 458, 463.) The defendants' letters of May 18, 1850,

May 23 and May 30, 1850, require *particulars of amount*, or *indebtedness* of R. H. Miller.

2. That the preliminary proof does show an interest in the plaintiff, appears *and is admitted by the defendants' 2d and 3d grounds ;* and the preliminary proof as to the plaintiff's interest was held to be sufficient by this court, in the opinion, on the demurrer.

3. *Any interest* or *benefit* to be derived by the plaintiff from the life of R. H. Miller, *destroys the character of a wager policy ;* and at the time the defendants' motion was made, proof on the trial had been made by the plaintiff's witness. (2 Greenleaf on Evidence, 329, § 409.) "But in regard to the interest of the plaintiff in the life in question, it is not to be such as to constitute the basis of any direct claim in favor of the plaintiff, upon the party whose life is insured, if an indirect advantage may result to the plaintiff from his life." (*Lord* v. *Dall,* 12 Mass. R. 115.)

II. The charge of the court was correct.

1. The complaint and answer present the issue of fact as to the waiver, and testimony was taken thereupon, and that issue, therefore, was to be tried by a jury ; (sec. 253, Code ;) and before the Code, the question of waiver of further preliminary proof was held properly to be submitted to the jury. (*McMasters* v. *The Westchester Mutual Insurance Company,* 25 Wend. 379 ; *Martin* v. *Fishing Insurance Company,* 20 Pick. 389.) And as to the preliminary proof, the court very properly left it to the jury to determine whether the defendants had not waived their right to any further proof, &c.

2. As to the amount the jury were to find, nothing less than $1,000, the whole amount stated in the policy, would fulfill and satisfy the terms of the contract. Nothing less than the whole sum is given upon a total loss. (*Whitney* v. *American Insurance Company,* 3 Cowen, 210.) Here was a total loss of the thing insured—the life of R. H. Miller. (1 Bonnier's Institutes, 501.) "In an insurance on life, as the

loss is a total loss, the full sum insured must be paid." (2 Greenleaf on Evidence, 329, § 409.) "But in regard *to the interest* of the plaintiff in the life in question, it is not necessary that it be such as to constitute the basis of any direct claim in favor of the plaintiff, upon the party whose life is insured ; *it is sufficient if an indirect advantage may result to the plaintiff from his life*." (Ellison Ins. 122–128 ; *Lord* v. *Dall*, 12 Mass. R. 115 ; *Leonard* v. *The Eagle Life and Health Insurance Company*, by *R. H. Walworth, Referee*, United States Magazine, vol. 4, No. 3, p. 286 ; *Crawford* v. *The Mutual Life Insurance Company*, New-York Superior Court, 1853.)

By the Court. Woodruff, J.—There is no foundation for the motion made by the defendants on the trial of this cause to dismiss the complaint, because the action was prematurely brought.

This claim was urged upon two grounds : *First*, that the plaintiff did not, before the commencement of the action, furnish proper and sufficient preliminary proof of the death of Ralph H. Miller, upon whose life the insurance was effected ; and *second*, that sufficient preliminary proof of the plaintiff's actual pecuniary interest in the life of Ralph H. Miller was not furnished to the defendants before the commencement of the action.

As to this second point, it would seem sufficient to say that no preliminary proof of interest was, by the conditions of the policy, to be furnished. The exhibition of proofs to the defendants on this subject, was not made a condition precedent to the title of the plaintiff to demand payment. By the terms of the policy, the sum insured was made payable within sixty days after notice and proof of death. How ever true it may be that no recovery can be had if the plaintiff had no insurable interest, it in no wise follows that if he had an insurable interest, his right of action was not perfect in sixty days after proof of the death.

That was the only preliminary proof prescribed in the

contract, and if the defendants thought proper to make any further condition, requiring proof of any other matter, they did so at their own peril.

The plaintiff's right of action was complete, (if he had an insurable interest,) when he had complied with the conditions of the policy, although he commenced his action at the peril of being defeated, if it appeared, on the trial, that his contract was a mere wager.

I find nothing in the cases cited by the counsel for the appellants inconsistent with this view.    They are cases in which the question, as to sufficiency of proof, related to proof of interest *on the trial,* or where it was made one of the conditions of the policy, that the sum insured should only be payable after proof of loss, which proofs were to be accompanied by particulars showing the extent of the loss sustained, the situation and value of the property, and the like. Such a condition is common in fire and marine policies, and when inserted, is to be complied with, otherwise there is no such precedent condition, and the parties respectively prosecute and defend upon the usual terms.   If the plaintiff establishes his case on the trial, he recovers, and cannot be defeated because he did not *prove* his claim to the satisfaction of the *defendants* before he commenced his action.   The present contract has a plain and obvious construction in this respect, by its common law signification.   The defendants agreed to pay to the plaintiff " one thousand dollars within sixty days after due notice and proof of the death of the said Ralph ;" and how many soever the other particulars may be which the plaintiff must establish before he could enforce that contract, it was no part of the contract that he should exhibit his evidence to the defendants before the trial.

It will, I think, appear in the discussion of the other questions arising upon the exceptions to the judge's charge and the merits of the plaintiff's claim, that, even if the plaintiff was bound to furnish to the defendants preliminary proof of interest in the life insured, he did so.   The correspondence shows that the agreement between the plaintiff and R. H.

Miller was laid before the *defendants*, and proper affidavits, showing that advances were made, and that R. H. Miller had entered upon the service contracted for. The correspondence and the whole history of this controversy, and the arguments of the defendants' counsel, proceed upon the idea that the plaintiff, to entitle himself to recover, must show, affirmatively, that he was or would have been entitled to receive from R. H. Miller, in pursuance of that agreement, or what was done under it, a specific ascertained amount, equal to or exceeding the sum insured; and they ask the plaintiff for "a particular statement," in which, they insist, this should be made to appear on his part affirmatively. If, in the further discussion of the subject, it should seem that the plaintiff was not bound to show in very terms how much would have been derived from the labor and services of Ralph H. Miller, had he lived, or do more than prove the very facts, which appeared in the papers that were laid before the defendants, then, although the plaintiff's mere affidavit is not strictly legal and technical *proof*, yet, in connection with the agreement and the other affidavits, it should, I think, have been deemed reasonably sufficient, unless the defendants based their objection upon the absence of further corroborating evidence. It was not further authentication of the agreement, nor further proof that R. H. Miller received from the plaintiff his outfit and the goods referred to, and left in pursuit of the enterprise, that the defendants required; but it was details and particulars, and those, too, relating to a matter resting in conjecture, and of which no particulars were practicable, viz: The results of two years' labor and services, the performance of which was rendered impossible by death.

The consideration of this branch of the subject will be material under the other exceptions herein, but under the conclusion above stated, that *preliminary* proof of *interest* was not necessary, it need not be further pursued here.

In regard to the *first* objection above named, to wit, that the plaintiff did not furnish to the defendants sufficient

preliminary proof of the *death*, I am no less clear that no error was committed, in denying the defendants' motion to dismiss the complaint, by which the defendants were in any manner prejudiced.

The correspondence between the plaintiff and the agents of the defendants shows very distinctly that the defendants placed their objection to the payment of the sum insured upon the ground that the amount of the plaintiff's interest did not appear with sufficient particularity. Thus, the letter of the 18th May, 1850, distinctly referring to the preliminary proof of death, &c., says:

"We received your affidavit and that of Mr. Strobridge, respecting death of R. H. Miller; *you have omitted to furnish a statement of the interest* in the life." So the letter of May 23d: "What we require is, to know *what amount you advanced*, and *what amount has been returned* to you," &c.—" or, in other words, we want a *statement* of *R. H. Miller's indebtedness* to you." And again, on the 30th May, after a somewhat extended discussion of the nature of the contract of insurance and the law relating thereto, as understood by the company, to show that the plaintiff can recover no more than his pecuniary interest in the life of the deceased, the letter of their general agent proceeds: "What has been required of you is only in accordance with the whole object and intent of insurance. "It will therefore be necessary for you to furnish the company with a particular *statement of interest* at the *time of death* of the party insured."

In all this there was no intimation that the proof of death was not entirely satisfactory; on the contrary, the language imports an admission that R. H. Miller is dead. In my own judgment the affidavits which have been furnished to the company, although not strictly legal proof, were such as might reasonably and properly be deemed by the company satisfactory, but whether so or not, they were at liberty to treat them as sufficient, and no proposition is more fully settled than that an insurance company may waive defects in the preliminary proofs, and may, if they please, dispense

with them altogether ; and where they place their refusal to pay upon another distinct ground, they are deemed to waive any further compliance with this condition of the policy, or to assent to the sufficiency of the proofs in this respect.

Thus, in *Voss* v. *Robinson*, 9 J. R. 195, the court distinctly held that, by placing his objection upon another ground, the underwriter admitted the sufficiency of the preliminary proof, or waived the necessity of producing it. In *Francis* v. *The Ocean Insurance Company*, 6 Cowen, 404, and S. C. in Error, 2 Wend. 64, the preliminary proofs were not claimed to be sufficient, but it was insisted, and the court held, that the defendants, by putting their objections on the merits and not on the defect, waived any imperfection in such proofs. The same doctrine was again stated in the Court of Errors in *Ætna Fire Insurance Company* v. *Tyler*, 16 Wend. 401 ; and again in *McMasters* v. *The Westchester Mutual Insurance Company*, 25 Wend. 379, and *Turley* v. *The North American Fire Insurance Company*, Ib. 374. Cases might be multiplied, in this and other states, to the same effect, but it is not necessary. The evidence above recited was in no wise contradicted when the motion to dismiss the complaint was made, and the court rightly denied the motion, so far as it rested upon any defect in the preliminary proofs.

It will be convenient, in this connection, to consider one of the exceptions taken to the charge of the judge to the jury, which is now urged as a ground for reversing the judgment, to wit, that the judge submitted to the jury to find as questions of fact: 1st, whether the defendants did require any further proof of the death ; and 2d, whether they waived any further proof of that fact; with a distinct declaration, that if they found for the defendants upon either of the questions, the verdict should be rendered in their favor.

The defendants' counsel then insisted, and now insists, that those questions ought to have been determined by the court as questions of law.

After the denial of the motion to dismiss the complaint, the defendants furnished some oral testimony to the effect that

NEW YORK—JANUARY, 1854.        287

Miller v. The Eagle Life and Health Insurance Company.

the agent of the company did, nearly two months after the foregoing correspondence, and a few days before the suit was brought, tell the plaintiff that he had given no proof of the death, and that the company could not pay on such proof of death as he had furnished. To this the general agent testified, and he is corroborated by another witness. But this is contradicted by one of the plaintiff's witnesses, who was present and heard the whole conversation.

Upon the whole evidence, I think the finding was correct upon this point, and, therefore, whether the question was properly left to the determination of the jury, or should have been decided by the court, the result is the same. The defendants have suffered no prejudice. If it was a question for the jury, they have found against the defendants, and in accordance with the weight of the evidence, when the whole correspondence, as well as the oral testimony, is taken into view. If it was a question for the court, the result is the same, for the court must have held the proof of waiver amply sufficient. Besides, if it be assumed, that what the defendants' witnesses testified was true, it could not, I think, affect the result.

The defendants had taken their ground long before the interview referred to. They rested their objection upon another ground, and in substance and effect admitted the death of the subject of the insurance, and so waived further proof on that point.

They could not, afterwards, just as a suit was to be brought, and without any pretence that they had been deceived, or misled, or were even mistaken, change their ground and say to the plaintiff, you must now furnish better proof of death, and wait another sixty days after that is furnished. Indeed, the testimony of the agent himself is quite consistent with this statement of their position : " True, we have waived further proof—we have admitted the death—we rely upon want of interest as a defence ; but as you 'have employed a lawyer,' we shall retract our admission, and set up the defects we have heretofore waived." If he did tell the plaintiff that the

proof of death was insufficient, he stated what, if true, the plaintiff may have been aware of already, and at the same time he knew that the insufficiency was waived.

There is nothing, then, in this exception to the charge. I do not, however, mean to be understood as saying, that the question ought to have been decided by the court, but only that we should not reverse upon any such ground, where the court must have decided as the jury in fact found. The case of *McMasters* v. *The Westchester Mutual Insurance Company*, 25 Wend. 379, (in which the doctrines of *The Columbian Insurance Company* v. *Lawrence*, 2 Peters, 48, &c., so largely relied upon by the appellants as their authority for their various points in this case, is commented upon and condemned,) shows that this was a proper question for the jury.

The sufficiency of preliminary proofs to satisfy the condition in the policy, and what facts amount to a waiver of such proofs, or of defects therein, are undoubtedly questions of law, and must be decided by the court. But whether such proofs were furnished to the defendants, and whether the acts were done which constitute the alleged waiver, are both questions of fact, and are, I think, properly left to the jury.

The remaining grounds urged in support of the motion to dismiss the complaint, involve the whole merits of the plaintiff's case; and embrace the exception to that portion of the charge of the judge, wherein he instructed the jury that the plaintiff, if he was entitled to recover at all, was entitled to recover the whole sum insured.

The defendants insisted that the policy was a mere wager, and therefore void.

That the plaintiff had no insurable interest in the life of Ralph H. Miller, either at the time the insurance was effected, or at his death. That if he had any interest whatever in such life, it was an interest in the profits of an enterprise undertaken by him and R. H. Miller; and if such an interest is insurable at all, it must be made as an insurance upon profits, *eo nomine*, and that the plaintiff had not proved that any

profits were made, and therefore Ralph H. Miller never became debtor to the plaintiff, so as to give him any insurable interest in the continuance of his life.

And finally, that the policy is not to be deemed a valued policy, and so the plaintiff was bound to prove a specific ascertained loss to the full amount, or otherwise it was erroneous to charge the jury that the plaintiff was entitled to recover the sum insured.

There is no dispute about the facts. It was not insisted that there was any question of fact to be submitted to the jury, if the views entertained by the court respecting the law governing the transaction are correct, which was not submitted to them; nor is it argued, on the appeal, that if those views of the law are to govern this case, the defendants have been prejudiced by the withdrawal from the jury of any question of fact upon which there was any difference between the parties.

The facts, so far as I deem them material to the determination of this case, and not questioned on the argument of the appeal or on the trial, may be stated thus:

The plaintiff and Ralph H. Miller agreed together that the former should advance the necessary funds for the outfit, and all other needful purposes of the latter, who was then about to leave for California, and in need of funds to pay his expenses, and that the plaintiff should have one half of all profits to arise from gold diggings, and any other employment or business the said Ralph H. Miller should engage in, (including one half of the profits in goods taken out, or to be sent out,) for the space of two years.

The plaintiff did advance money for such outfit, and also for goods furnished to R. H. Miller for the enterprise. Such advance exceeded one thousand dollars.

The defendants, on the day of the departure of the said R. H. Miller, (23d May, 1849,) executed the policy in the complaint mentioned, insuring his life for the period of three years, whereby, in consideration of the sum of $39, premium for one year, paid by the plaintiff, they agreed to pay him

one thousand dollars within sixty days after due notice and proof of the death of the said Ralph, with other particulars and conditions not material to the present case.

The subject of the assurance, Ralph H. Miller, went to California, and died there in October, 1849.

These facts appear to me to be all that are essential to the determination of the questions before us.

*First,* then, Was the contract between the parties a valid, binding contract?

By the common law, the contract was complete and binding. (*Assievedo* v. *Cambridge,* 10 Mod. 77; *Nantes* v. *Thompson,* 2 East, 385, and cases cited; *Martin* v. *Sitwell,* 1 Show, 156; *Delby* v. *The India and London Life Ass. Co.,* 15 Com. B. Rep. 365; 28 Eng. L. and Eq. R. 312.)

Its entire validity, irrespective of any statutory inhibition, is conceded by the defendants' counsel, and this is true, even though the contract was a simple wager, since by the common law, a wagering contract, containing the essential requisites of a binding contract in other respects, is as valid as any other. (See *Buchanan* v. *Ocean Insurance Company,* 6 Cowen, 332, and cases cited.)

But in England, by the statute 14 Geo. III., c. 48, it is enacted that no insurance shall be made upon a life wherein the assured has no interest; and when the assured hath an interest in such life, no greater sum shall be recovered from the insurers than the amount or value of such interest.

Under this act, it is held, in England, that the party for whose benefit the insurance is made, must have a *pecuniary* interest in the life insured, and, therefore, that the mere relationship of a father to a son will not sustain an insurance by the former upon the life of the latter. (*Halford* v. *Kymer,* 10 B. & C. 724.) And yet, that a wife may insure the life of her husband and recover thereupon, without other proof of interest than the relation between them. (*Reed* v. *Royal Exchange Assurance Company,* Peake's Add. Cas. 70; 2 Park on Ins. 640; 3 Carr. & Payne, 353.) And that a creditor may effect a valid insurance on the life of his debtor, and

an annuitant whose annuity is dependent upon another's life, may insure such life, is also settled by numerous cases in that country. (Peake, 151.)

The language of our own statute, by which the present case must be governed, differs somewhat from that of Great Britain. By our law, (1 Revised Statutes, 662,) all wagers * * made to depend upon * * any * unknown or contingent event whatever, are declared to be unlawful. But it is declared, (§ 10,) that this prohibition shall not "in any way affect insurances made in good faith, for the security or indemnity of the party insured."

Under this language, it is possible that the exception in our statute might cover a class of cases which would be at best of doubtful validity under the English statute.

Thus, in Massachusetts, where it was suggested by the Supreme Court that a mere wager policy would be void, as being contrary to the general policy of their laws, it was nevertheless held, that a single woman, who had been for several years supported and educated at the expense of her brother, and who was still dependent upon him, and towards whom the brother had manifested a strong disposition to continue that support, has an insurable interest in the life of such brother. (*Lord* v. *Dall*, 12 Mass. 115.)

Under this decision, a strong probability of pecuniary benefit from the continuance of the life, without a strict legal claim to such benefit, is sufficient to save the contract from being deemed a wager.

If this construction be adopted in reference to the prohibitory clause in our statute, then most clearly the policy set forth in the complaint was not a wager; and if the meaning of "indemnity" in the exception in our statute be construed with the like liberality, then here the plaintiff had, within the statute, a right to effect an insurance, which should practically secure to him an indemnity against the loss of the benefits which were contemplated from the enterprise undertaken by him with Ralph H. Miller, and which were lost by the breaking up of that enterprise by his death.

It is, however, by no means necessary that we should go so far as this, to bring the present policy within the exception in our statute, nor, as I also think, to show it perfectly valid under the English statute referred to. For this purpose, it will be sufficient to say, that where the assured has a clear legal title to any pecuniary benefit arising from the continuance of the life insured, the insurance is valid, being made for his indemnity against the loss of that benefit. Such is the case of a wife insuring the life of her husband, above referred to. She has a clear legal right to maintenance and support so long as he shall live. Nor is it necessary that the benefit should be inevitable or certain to result from the continuance of the life. It is not *certain* that a debtor will pay the debt due to his creditor, however long he may live, and yet his creditor has an insurable interest, founded on his title to such payment out of the acquisitions of such debtor, and the earnings of his future life.

So, I apprehend, a master having a legal title to the labor of his servant for a term of years, has an insurable interest in the life of such servant; and within the exception in our statute, the insurance may be made for the master's indemnity against the loss of his services by his death.

And upon the same principles, where one has advanced money upon the faith of another's executory contract, to render him any pecuniary advantage in the future which death will render impossible, the former may insure the life of the latter, for the purpose of an indemnity against loss, not because it is absolutely *certain* that such advantage will be derived from the continuance of the life, (since the party whose life is insured may violate his contract, or other contingencies may prevent his performance,) but because he has a title to that performance and the resulting pecuniary advantage, which is wholly defeated by the happening of the contingency insured against. It is not intended to intimate that an equitable title or interest may not also be protected by such an insurance. I have no doubt it may be. (See *Crawford* v. *Hunter*, 8 T. R. 23.)

Was the plaintiff in this case in a condition to seek indemnity against a loss by the death of Ralph H. Miller? In other words, had he a title to any pecuniary advantage resulting from the continuance of the life in question, against the loss of which he could be indemnified? This does not appear to me to admit of a doubt. He had advanced money (and in this view of the case, the amount does not appear to me to be material) upon an agreement that he should have one half the proceeds of the labor, skill and industry of the said Miller, for the period of two years. This is the meaning of what are in the agreement termed "profits."

One half of whatever R. H. Miller earned or gained by his labor, skill and industry, whether by mining or merchandising or otherwise, over and above his expenses, belonged to the plaintiff. He had then a clear interest in and title to that labor, skill and industry, for his own pecuniary emolument. In judgment of law, that labor, skill and industry were beneficial. They tended directly to not only reimburse his advance, but to give him (as the case might be) much larger benefit.

It is urged, that it in no wise appears that the efforts of R. H. Miller would have produced any pecuniary benefit to the plaintiff.

So it may be said to a wife, *non constat*, that your husband will support you if he live.

Or to the creditor, *non constat*, that your debtor would have been either able or willing to pay you, had he lived. Or to a master, *non constat*, but that the labor of your apprentice would have been unproductive; or, but that infirmity or vice in him would have made a continuance of the relation a burden to you, instead of a profit.

The law does not proceed upon any such speculation as to possible results. There is a legal presumption of benefit in all these cases; because there is a claim to what is in its nature beneficial.

There is, in like manner, a legal presumption of loss from the death, against which the party may properly seek indem-

nity; because death destroys the claim to the presumptive benefit, or renders its attainment impossible.

I should be disposed, I think, to go further, and say, that, under our statute, an insurance, made in good faith, would be valid upon a life, when there was reasonable expectation or high probability of gain from its continuance, or of loss from the death; as in the case cited from Massachusetts, and other examples which might be named. (See 3 Kent, 271, and cases cited; Ib. 368, &c.) But it is unnecessary for the purposes of this case.

I am therefore clear, that the plaintiff had an insurable interest in the life insured. He had advanced an outfit; and this, with all that might arise from two years' employment, he must lose by the death, and might gain by the continuance of the life. However uncertain or contingent the value of the plaintiff's interest in the life may have been, that interest had value, and was an interest in law, as truly as according to the common acceptation of terms; and that interest (whether in the end it might prove more or less productive) was lost by the death. There was, then, an occasion for indemnity within the statute.

In speaking of such an insurance as being an *indemnity* to the party insured, I do not mean that in the *construction* of the contract as between the assured and the assurer, it is necessarily to be taken as an agreement to indemnify only. Such a construction of an insurance upon one's own life would be impracticable; and in the case above referred to, (*Dalby* v. *India and London Life Insurance Company,*) a life insurance is held in no case to be a contract of indemnity, but a mere contract to pay a sum certain on the happening of the death, &c. In this respect it is clearly a valued policy; but in another sense, and, in my judgment, the sense used in our statute, I have spoken of it as "*made* for the *indemnity* of the party assured;" and when so made, and made in good faith in favor of one having an insurable interest, it may operate as a valued policy. There being occasion for indemnity—the policy being made for that pur-

pose—it is a lawful contract under the statute, and neither the statute nor any rule of policy forbids the parties (in good faith, and without any intent to evade the statute) agreeing upon and fixing the precise sum which shall, as between them, be paid, on the happening of the death. Such payment, though of a sum certain agreed upon, is yet a payment as and for an indemnity. The object and purpose of a covenant to pay a sum certain as liquidated damages, is to secure compensation or agreed indemnity, and this differs from an agreement to indemnify. A life insurance is made under our statute for the indemnity of the assured. That is the purpose and object which makes it a lawful contract. But it does not follow, that when a loss happens, the insurance for a sum certain agreed upon, is to have no other effect than an agreement to indemnify, and so open the inquiry whether the assured has been damnified.

It is, perhaps, even more clear, that under the term "security," in our statute, the validity of the contract is affirmed. The performance of the contract made with the plaintiff by Ralph H. Miller, and the enjoyment of the pecuniary benefits to arise therefrom to the plaintiff, (be they greater or less,) depended upon two contingencies—his life and his fidelity.

Any undertaking given to the plaintiff, as a guarantee of either, would be a security to him that he should receive those benefits.

Suppose, then, that the plaintiff had taken from some third person a bond, conditioned for the fidelity of Ralph H. Miller in the performance of his contract. Instances of similar bonds are of every-day occurrence, and are within the prohibitory clause in our statute, in the same sense as is the contract under consideration.

But such a bond is a security to the party by whom it is received. It is a guarantee that he shall receive the benefit of his contract, so far forth as that benefit depends upon the fidelity of the other party to his engagements, and such bonds are constantly enforced.

What are called "guarantee policies," executed by the insurer, insuring an employer against loss by the dishonesty, negligence or fraud of his employee, the validity of which is not questionable, are of a similar character. (See numerous cases referred to in Bunyon's Life Assurance, 105–6, &c.)

In like manner, the contract made by the defendants here is properly regarded as entered into with this view, viz.: that inasmuch as the performance of the contract by Ralph H. Miller, and the enjoyment of the fruits of his labor, skill and industry are contingent upon his life, the defendants guarantee that performance, and the enjoyment of that labor, skill and industry, so far forth as they depend upon that contingency. To my mind, this seems an obvious "security," within the meaning of the statute, nor can any example be named which is more clearly so. The contract in question, then, was not invalid as a wager, if it was made in good faith, for the purposes above suggested.

Doubtless, even where a relation subsists between the assured and him whose life is the subject of the insurance, similar to that exhibited in the present case, the insurance may yet be made to an amount so grossly disproportioned to the probable or possible benefit resulting to the assured from the continuance of the life, as to be deemed an evasion of the statute, or a mere cover for a wager, and in such case the contract may be wholly void. (*Vide Wainright* v. *Bland*, 1 Moore & Rob. 481.) But no such thing is claimed here. The good faith of the plaintiff in effecting this insurance is not called in question.

It remains, therefore, to consider what is the proper measure of recovery; and in considering this question, it will be convenient to observe, by way of summary from the views above suggested, that this is a valid, binding contract, made in good faith, within the exception in our statute, and therefore is to be enforced according to its fair interpretation.

The defendants' counsel further insist, that if this policy be not void as a wager, and be, therefore, under the circumstances, to be regarded as *prima facie* a valid contract, there can

be no recovery under it, because the loss sustained by the plaintiff, if any, is a loss of "profits" only, and that profits are not covered by an insurance, unless insured as such.

It is, I think, true, that under the agreement made by the plaintiff in this case, his interest in the life of R. H. Miller was founded in his title to the proceeds of his labor, skill, and industry, and his right to require the employment of that labor, skill, and industry in the enterprise set on foot between them, and was not founded in a claim against R. H. Miller, (as his debtor or otherwise,) for the return of the advances made for his outfit. The agreement in no wise provided that those advances should, as such, be refunded.

I think it also plain, that the value of the goods sent to California cannot be made the basis of the recovery upon any proofs given on the trial. The loss of the goods was no necessary consequence of the death, nor was the death *prima facie* evidence of such a loss. For aught that appears, the plaintiff, notwithstanding the death, may have received the proceeds of the goods, and all profits which could arise therefrom.

And it is no doubt well settled, that in cases of fire and marine insurance, it is the value of the subject of the insurance, and not the profits of the use thereof, that are covered by the policy; and hence, that if it be designed to cover such profits, they must be expressly named.

Thus, a policy upon a building covers the value of the interest of the assured in the building, and not the profits he might be able to derive from the use thereof. A policy on a ship covers the like interest in the ship, and not the freight she might have earned; (see 3 Johns. Cas. 43;) and a policy on goods covers the value of the goods, and not the profits which might have been gained thereon had they reached their destination. The cases cited by the defendants' counsel show this, and others might be added. (*Murdock* v. *Chenango Insurance Co.*, 2 Comst. 217; *Niblo* v. *N. A. Insurance Co.*, 1 Sand. 556–7; *Barclay* v. *Cousins*, 2 East, 544; *Laurent* v. *Chatham Fire Insurance Co.*, 1 Hall, 41;

*Tower* v. *Smith*, 3 Caines, 214; see cases cited in Har. Dig. of Eng. R. 3,363.)

The answer to this, however, is, that from the nature of the case, an insurance upon life is an insurance of the benefits to result to the assured from its continuance. Those are all that render the life insured valuable to him. No pecuniary value can be set upon the life, as upon property. Life cannot be the subject of valuation and sale. Labor and services, or the proceeds thereof, may be.

A wife recovers upon an insurance on her husband's life, in view of the benefits to result to her from his life; not because the life is of any value, irrespective of its devotion to her support and maintenance. A creditor recovers upon the death of his debtor, not because the life of the deceased was worth the amount of the debt, but because the expectation of payment of the debt is destroyed or impaired by the death.

The insurance upon a life is in the nature of an insurance upon profits, and nothing else.

In reference to a building, there are two things which may be insured, the value of the building and the profits of its use, or the income therefrom; so of a ship, there is its value, and its freight earned, or to be earned; so of goods, the present value and the increase thereof by transportation.

Besides, it is in general true, that other insurance policies provide that the payment of the loss is to be made on proof of the value of the subject.

The very idea of a pecuniary interest in the life of another involves a claim, not to the life itself, but to some benefit resulting from or growing out of that life, and (except the case of an annuity, derivable from some other source, but to endure only while that life shall continue) it involves also a claim upon the profits or proceeds accruing from the employment and efforts of the person whose life is the subject of the insurance.

An insurance, therefore, upon the profits of a life (so far as it can be the subject of insurance) would involve no idea

that is not, from the necessity of the case, embraced.in an insurance, in terms, upon the life itself, and the cases cited by counsel do not, therefore, in my opinion, affect the question. Although the interest of this plaintiff, in the life insured, was founded solely in the claim he had to the proceeds of the employment, labor, and industry stipulated for, the insurance was well taken in the present form. It embraces just as much as and no more than it would if the subject of the insurance had been described in the form of proceeds of that enterprise. I apprehend that a life insurance, in which the subject of insurance is expressed to be the profits resulting to the assured, from the continuance of the life, would be a novelty. None such is pointed out to us. And yet, in an insurance upon life in the present form, proof of interest of necessity involves, in most cases, a showing of nothing more nor less than that the assured has a claim to the pecuniary results of its continuance.

The defendants further insist, that the interest of the plaintiff in the life insured, having relation only to services, labor, and earnings, the proceeds whereof were to be equally divided between him and R. H. Miller, was an interest held jointly with the said Miller as copartnership property ; and that therefore a policy granted to himself in form and effect upon his individual interest, does not embrace it. It is not necessary to deny that an insurance, in terms, upon the goods of John Styles, will not cover the goods of a firm in which he is.a copartner. When the description of the subject of the insurance is such as plainly to relate to individual property, it may well be held to embrace no other; but this appertains to description and to description merely. And if the terms of the policy be such as to cover copartnership property, the interest of the assured therein will be protected by it. (See *Dumas* v. *Jones*, 4 Mass. 647; *Turner* v. *Burrows*, 5 Wend. 541 ; 8 Ib. 144; 2 Cranch, 419 ; *Lawrence* v. *Sebor*, 2 Caines, 205 ; *Lawrence* v. *Vaughan*, 1 Ib. 276 ; 3 Kent, 258.)

I am not aware of any rule or principle that prevents one of two joint owners or copartners insuring his separate share

or property in the joint stock or property held in common. One of two joint owners may insure his interest in a ship ; one of two tenants in common, his interest in a building. And again, the nature of the insurance now in question makes it applicable to the separate interest of the plaintiff, and to nothing else.

The views above suggested all tend to this result. Giving to this policy the construction upon which its validity depends, it was a security to the plaintiff and for his indemnity ; and the circumstance, that in inquiring whether he had an insurable interest, we discover that another had a concurrent and equal interest with him, does not alter its character. On no principle could the amount recovered be deemed joint property. Nor is it necessary that a policy should disclose the nature or extent of the interest of the assured. (See the cases last above cited, and *Tyler* v. *Equitable Insurance Co.*, 12 Wend. 507, and cases cited.) It will be sufficient if it appear that an insurable interest exists, and that the insurance was made in good faith to protect that interest.

Again, the defendants insist that a life insurance in favor of one upon the life of another, presupposes the subsistence of the relation of debtor and creditor, in which case the underwriters would be entitled to abate from the claim whatever the estate of the deceased debtor had paid; (*Goodsall* v. *Boldero*, 9 East, 72 ;) and upon payment by them, would be entitled to subrogation to the rights of the creditor as against that estate. As to this, however, see Bunyon's Life Assurance, 26–7, and cases cited.

It is unnecessary to question this view of the rights of the underwriter, where the relation of debtor and creditor exists. But the argument, sought to be drawn from it, would prove that no such insurance can be valid, unless the relation of debtor and creditor does exist, which proposition has been already sufficiently considered. If the view which I have taken of the subject be correct, the plaintiff would have had a valid claim under this policy, had Ralph H. Miller died within one day or one hour after he had entered upon the

Miller *v.* The Eagle Life and Health Insurance Company.

performance of the agreement, and before the vessel, in which he sailed from this city, was out of sight of our wharves; and yet the plaintiff would not have had a claim against his estate for any thing he had advanced, or for any anticipated profits. The question then finally recurs, What is the measure of the plaintiff's recovery?

The value of the plaintiff's interest was altogether contingent and uncertain. It depended upon the health of the assured—his industry and skill; upon various circumstances of accident, place and time, which could be neither foreseen nor controlled.

In this respect, the insurance was like an insurance upon profits. Indeed, the defendant's counsel not only concedes this, but he argues that it was (if it be sustained at all) an insurance upon profits. And that it was an insurance of that nature, though not technically so, is, I think, most clear. If this be true, it follows that this policy is to be deemed in the nature of a valued policy.

An insurance upon profits is held to be of that nature, whether it is so in terms or not. (3 Johns. Cas. 43.) And this, for the obvious reason, that in case of loss, it is impossible to determine what the profits would have been; as in case of an insurance of the profits on goods destined for another market, multiplied contingencies, the effect of which, in case of a loss of the goods, can neither be estimated nor ascertained, render it sometimes impossible, and at others exceedingly difficult to find any reliable criterion by which to determine what amount of profits might have been realized. Hence it is said, in *Tom* v. *Smith*, (3 Caines, 249,) "It is more equitable to consider these insurances as a species of valued policies on cargo, which they are in substance, though not in form;" and in *Mumford* v. *Hallett*, (1 Johns. R. 439,) "Though the profits are not valued, yet every such insurance must of necessity be considered as a valued and not an open policy. * * * "It does not follow that a profit will be made if the cargo arrives; and yet its loss would give a right to recover upon such an insurance."

If this view of the nature of an insurance upon profits be adopted, the conclusion is inevitable, that the present policy being in the nature of an insurance upon gains and profits, was, in substance, a valued policy, and the sum insured was the true measure of damages, as was charged by the judge on the trial.

It does not follow from this, that *every* insurance upon life is to be regarded as valued, *so as,* under our statute to entitle the assured to the sum named in the policy, *at all events ;* as for example, where the creditor insures the life of his debtor, or an annuitant insures the life upon the continuance of which the annuity depends; for although the policy be valued in very terms, it can only be sustained when made for the purposes which the statute authorizes.

Be this as it may, I am clearly of opinion that it must be regarded as valued in all cases, so as to dispense with proof of the actual amount of loss, or sum necessary to amount to indemnity, where the amount of the loss is not determinable by any specific known standard, or depends upon contingencies, the effect of which renders calculation impracticable, or so difficult as presumptively not to have been contemplated by the parties to the insurance.

It is, therefore, unnecessary, for the purposes of this case, to declare the policy upon life to be a valued policy, according to the use of that term in the law of insurance, or even to adopt the remarks of the court in the cases above cited, although that, in my opinion, is its proper character. (See 1 Phillips on Insurance, chap. 3d, § 14.) Under the English statute, which declares that the assured shall recover no more than the value of his interest, it may be that the burden of proof would devolve on the plaintiff to show that he would have realized some benefit from the continuance of the life and pecuniary value thereof. That was held necessary in a case of marine insurance upon profits, although valued in form under the statutes relating to that subject. In the recent case, however, above referred to, (15 Com. B. Rep. 365,) it is held, that it is not the interest at the time of

the recovery, but at the time of effecting the insurance, that determines the validity of the policy and amount of the recovery.

The difference between the phraseology of the English statute and our own may possibly require a different rule in this respect; but where it appears that the policy in question is made in good faith, for the indemnity or security of the party assured, and is therefore valid under our law, I perceive no rational objection to the view, that when it appears that the insurance was designed to guard against a loss, or to secure interests of uncertain amount, which, though they might be less, might also greatly exceed the sum insured, and depending upon contingencies, the effect of which is not from their nature susceptible of proof, the sum insured is to be deemed the indemnity intended by the parties.

This would accord with the most rational view of the contract itself.

Indeed, it only gives it effect according to its very terms, and is entirely consistent with our statute.

The policy may be said in effect to read thus: We agree to pay the plaintiff one thousand dollars in case of the death of R. H. Miller, to indemnify him for the loss of the probable fruits of the agreement between them.

This view is rational, because it is only by that view that the insurance (although a valid agreement) could have any practical effect.

Proof how much R. H. Miller would have realized from digging gold, had he lived, is impossible ; and shall the plaintiff's claim, therefore, fail entirely ? I think not. But if the defendants' argument in this respect is sound, it must; for the plaintiff had no claim to receive any thing from Miller, except proceeds of his exertions in that and other business; and he having died, the means of proving the actual loss in dollars and cents are gone forever, if the agreement with the defendants is not to furnish a guide.

An insurance on one's own life is recoverable to any amount, because the interest of the assured is presumptively worth any value at which it may be insured.

Miller *v.* The Eagle Life and Health Insurance Company.

The interest of a wife in her husband's life is not susceptible of any certain valuation by any standard capable of proof; and yet there it is not doubted, and cannot be denied, that the sum insured forms the proper measure of recovery.

So here, in the absence of any fixed or ascertainable criterion by which to determine the pecuniary value of the plaintiff's interest, the sum insured must be taken as the agreed amount of the loss by the happening of the event insured against. If not strictly in the nature of liquidated damages, it is the *prima facie* amount of loss.

Whether in a case in which the circumstances were such as to render it practicable, (as where the subject of the insurance had in fact been unsuccessful in the enterprise, and had abandoned it, and returned and died shortly before the term of years stipulated for had expired,) the defendants should be permitted to show that no proceeds could be realized by the plaintiff, and therefore that he had lost nothing by the death, and indemnity to him does not require the payment of any sum, it is not necessary to say. No such state of facts appears here. In the analogous case of the wife, I do not think that the underwriter would be permitted to show that the infirmities or vices of her husband were such that his death was a benefit and not a loss.

And it has long been doubted, and at last decided, in England, that if the insured had an insurable interest at the time the contract was effected, the amount to be recovered is not so altered by a subsequent cessation of that interest, that no greater sum shall be recovered than the value of the interest of the assured at the time of the recovery. (See the case of *Goodsall* v. *Boldero*, reviewed, and cases cited; Bunyon on Life Insurance, pp. 23–4; see, also, *Dalby* v. *The India and London Life Insurance Company*, 15 Com. B. R. 365.) And when, as in this case, the amount of interest remains unaltered, no inquiry into the probability that it would be saved if the life continue, could be permitted.

Under our statute, insurances of this description must, in

regard to the measure of damages, depend upon their peculiar nature and circumstances. Where the measure of indemnity is fixed and certain, or can be made so by proof, doubtless that should govern.

But where, from the nature of the interest of the assured in the life, the value is altogether contingent, and may be more and may be less, and can neither be proved nor be estimated by any available or known standard, the sum insured must be taken as the proper measure of recovery.

In my own opinion, all policies upon life should be treated as valued policies; and when the plaintiff has shown enough to bring his case within the exception in our statute, by proof that the insurance was made in good faith, for his security or indemnity, he should be deemed, (*prima facie*, at least,) entitled to recover the sum insured. But it is not necessary to pursue the subject further. The judgment should be affirmed.

Judgment affirmed.