### THE OCEAN INSURANCE COMPANY *vs.* BASIL FRANCIS.

The sentence of an *instance* court of admiralty, proceeding *in rem,* condemning property seized as forfeited, is final and conclusive to change the property, and the question of forfeiture cannot be inquired into collaterally in any other court of the *same country* where such condemnation takes place. The same rule prevails as to the decisions of admiralty courts proceeding as prize courts agreeably to the law of nations. In *England,* the sentence of such courts is held final and conclusive against all the world, not only as changing the property, but as precluding an inquiry into the facts of the case, either directly or collaterally, by the courts of *any other country.* So also the law has been holden to be by the supreme court of the U. S. and by some of our sister states; with us, however, it is otherwise. The rule here is, that the sentence of a foreign court of admiralty, condemning property as good and lawful prize according to the law of nations, is *conclusive* to change the property, but is only *prima facie* evidence of the facts on which the condemnation purports to have been founded; and in a collateral action, such evidence may be rebutted by showing that no such facts did in reality exist. Where a vessel, warranted not to be employed in an illicit trade, is condemned by an admiralty court, acting as a municipal court to carry into effect navigation laws, for a violation of such laws, to support the allegation of a breach of such warranty, it is incumbent on the insurers to prove the existence of the laws alleged to be violated, as courts cannot judicially notice the municipal laws of foreign countries, but do require them to be proved like other facts. Per WALWORTH, Ch.

The judgment or decree of a court having jurisdiction of the subject matter, is evidence of the grounds upon which it is rendered; but from the terms of the proposition, two things must appear: 1. That the court had jurisdiction; 2. The grounds of the decree. A decree pronouncing a vessel forfeited, "for a breach of some or one of the laws relating to trade and navigation," amounts to no more than saying that the vessel is condemned "for some cause or other," and will not be recognized as a judgment. The sentence should establish a violation of some precise law; and where in itself it is insufficient, it is unnecessary to inquire whether it has been successfully impeached by the facts of the case. The facts of seizure and condemnation are not enough to support the allegation of a breach of warranty; the law under which the same took place must be produced and proved. Per SPENCER, Senator.

Where a vessel is warranted as being *British,* general evidence of her national character is *prima facie* sufficient, until doubts are raised by proof on the other side. Per WALWORTH, Ch.

The insurer, when he sets up the breach of a condition as a defence, must prove the breach, or at least rebut the general presumption by proof on his part. Per SPENCER, Senator.

Whatever may be the law upon the question, how far a citizen or subject is bound by the legislative or executive acts of the government to which he belongs, *it seems*, he is not bound by the *judicial acts* of a tribunal, merely because he is a subject of the government under which that tribunal is organized. Per WALWORTH, Ch.

How far and in what cases a citizen is bound to look to his own government only for redress for injuries committed by the judicial, legislative or executive departments of his own country within the scope of their authority, *quere*. The question whether the assured can recover for an act done under the authority of his own state, does not arise, where, from the sentence of the court, it does not appear that the seisure and condemnation were, by virtue of such authority, for a violation of a municipal law of the government to which the party belonged. Without proof of the existence of such law, and that the condemnation was for a violation thereof, the whole must be considered illegal and unauthorized. Per SPENCER, Senator.

Where underwriters make no objection to the sufficiency of proof of interest, but put their refusal to pay on the ground that they are not liable for the loss, it is a waiver of preliminary proof of interest.

Testimony that a voyage was fair and lawful, and that the vessel was not engaged in any illicit trade, is evidence of *fact*, not of *law*.

The neglect of a supercargo to put in a claim to a vessel captured for an alleged violation of navigation laws, does not affect the claim of the assured for a total loss.

Exceptions to interrogatories annexed to a commission to take the testimony of a witness, proposed in the progress of a cause, may be taken when the answers are offered in evidence. Per SPENCER, Senator. (6 *Cowen*, 416, contra.)

ALBANY,
Dec. 1828.

Ocean Ins. Co.
v.
Francis.

ERROR from the supreme court. The action in the court below was assumpsit for a total loss on a policy of insurance. The cause was tried at the New-York circuit, and a verdict rendered for the plaintiff for $8000, subject to the opinion of the supreme court on a case to be made, with liberty to either party to turn it into a special verdict or bill of exceptions. The case was argued in that court, and judgment rendered for the plaintiff; to reverse which, the record was removed to this court by writ of error.

For the facts of the case, the arguments of counsel in the supreme court, and the opinion of the court, pronouncing judgment in favor of the plaintiff below, see 6 *Cowen*, 404 to 431.

The cause was argued here by

ALBANY,
Dec. 1828.

Ocean Ins. Co.
v.
Francis.

*G. Griffin* and *D. B. Ogden*, for plaintiffs in error, and by

*W. Betts* and *J. Duer*, for the defendant.

THE CHANCELLOR.    In the documents exhibited as pre-liminary proofs, the interest of Basil Francis was distinctly stated.    The insurers made no objection that there was not sufficient proof of interest, but put their refusal to pay on the ground that they were not liable for the loss.    That was a waiver of any further preliminary proof of the interest of the assured, and brings this case directly within the decision of the supreme  court in *Voss* v. *Robinson*, (9 *Johns. R.* 192.) Neither is there any validity in the objection to the answers of the master to the 11th and 12th interrogatories.    He tes-tified, that so far as his knowledge extended, the voyage was fair and lawful ; that the vessel was regularly cleared ; that he knew  nothing of any illicit transactions on the voyage ; and that she was not engaged in any illicit trade while he commanded her.    This was not swearing to the law, but to the facts.    If the witness had no reason to believe the trade was illicit or unlawful, his answer to the interrogatories was correct and proper.    If there were any facts within his knowledge, which, in contemplation of law, would render the trade illegal, the insurers, by proper cross interrogato-ries, might have drawn out those facts, and thus have re-stricted his general answers.

Whether it was necessary for the assured to give any thing more than general evidence of the brig's being regularly doc-imented as a British vessel, before some doubt was thrown on the subject by the opposite party, is a question which does not appear to have been distinctly settled.    Marshall says, " In the case of a warranty that the thing insured is neutral property, it is usual at the trial to give general evi-dence of the truth of that warranty, and leave it to the de-fendant to falsify it, or prove a breach or forfeiture of it. (2 *Condy's Marshall,* 714.)    In the case of *Coolidge* v. *The New-York Fire Insurance Company,* (14 *Johns. R.* 308,) the only evidence produced to prove the interest of the plaintiff, and to show that the vessel was documented as an American ship, was a certified copy of the register.    The court deci-

ded that such a copy was not legal evidence, and that a sworn copy should have been produced. No general proof was offered, and, of course, the question whether the onus of showing the particular defect in the documenting of the vessel lay on the defendants did not arise. In the case of *Ludlow* v. *The Union Ins. Co.* (2 *Serg. & Rawle's R.* 119,) the supreme court of Pennsylvania decided that under the warranty of neutral property, it was sufficient for the plaintiff, in the first instance, to give general evidence of neutrality, leaving it to the defendant to show probable cause to suspect that the necessary papers were wanting; after which the burthen of proof would be thrown upon the plaintiff. It is also doubtful whether the objection to the parol evidence of the consular certificate was raised on the trial. The only objection stated in the bill of exceptions is that which was made to the reading of Sayre's affidavit annexed to the record of the proceedings in the admiralty court. Independent of that affidavit, I think there was sufficient evidence of the loss of the paper to allow parol evidence of its contents to be given: Thomas Francis, the supercargo, was dead; his brother Charles testified that he procured the certificate or licence from the British consul, and delivered it to his brother Thomas, two days before the vessel sailed; that his brother put it into a tin box with the ship's register, and that it was taken possession of by the captors. The reasonable presumption is, that this certificate, with all the other ship's papers, was deposited with the registrar of the court, according to the usual practice in such cases. The registrar testifies that after a careful and diligent search, the only proceedings which have come to his hands are those which are annexed to his deposition.

It cannot be necessary, in this case, to examine the question how far a person is bound by the legislative or even the executive acts of the government to which he belongs. Although the judges of the king's bench, in the recent case of *Campbell* v. *Innes*, (4 *Barn. & Ald.* 423,) appear to have discarded the liberal doctrines held by Chief Baron Thompin *Bazett* v. *Meyer*, (5 *Taun.* 824,) I believe it has never before been contended, that a person, not a party to the

ALBANY,
Dec. 1828.

Ocean Ins. Co.
v.
Francis.

suit, was conclusively bound by the judgment of a foreign tribunal, merely because he was the subject of the government under which that tribunal was organized.

It is a general principle of the common law, that the judgment of a court of competent jurisdiction is binding and conclusive against all the parties to the suit, and can never be reviewed in a collateral action in any of the courts of the same state or country. And the same rule applies to the decisions of the exchequer, instance court of admiralty, and other courts proceeding *in rem* for the condemnation of property seized as forfeited. In all such cases, the sentence of condemnation is final and conclusive to change the property; and the question of forfeiture cannot be enquired into collaterally in any other court of the country where such condemnation took place. (*Scott* v. *Sherman,* 2 *W. Bl.* 977. *Dutchess of Kingston's case,* 11 *State Trials,* 261. *Hoyt* v. *Gelston & Schenck,* 13 *Johns. R.* 141.)

There is another class of cases growing out of the decisions of admiralty courts when proceeding as prize courts, agreeably to the law of nations. In all such cases, the decisions of the court condemning a vessel or cargo as a good and lawful prize, is conclusive to change the property, and can never be enquired into collaterally in any of the courts of the country under whose jurisdiction such condemnation took place. It has also been decided in the supreme court of the United States, and in some of our sister states, as well as in England, that the sentence is final and conclusive against all the world, not only to change the property, but as to the facts on which the condemnation was founded ; and that neither can be examined either directly or collaterally by the courts of any other country. (*Crondson* v. *Leonard,* 4 *Cranch's R.* 434. *Dempsey* v. *Insurance Company of Pennsylvania,* 1 *Binney,* 299, *note.* *Baxter* v. *The New-England Marine Insurance Company,* 6 *Mass. Rep.* 277. *Stewart* v. *Warner,* 1 *Day's R.* 143.) This court, however, has adopted a different rule, which must now be considered the settled law of this state. It is, that the sentence of a foreign court of admiralty condemning the property as a good and lawful prize, according to the law of nations, is conclu-

sive to change the property, but is only *prima facie* evidence of the facts on which the condemnation purports to have been founded. And in a collateral action, such evidence may be rebutted by showing that no such facts did, in reality, exist. (*Vanderheuvel* v. *The United Ins. Co.* 2 *Johns. Ca.* 451. *New-York Firemen Ins. Co.* v. *Dewolf,* 2 *Cowen's Rep.* 56.)

If the decisions of prize courts, acting under the law of nations, are only *prima facie* evidence of the facts on which those decisions are founded, there can be no good reason why the decision of a foreign court, founded upon the alleged violation of some municipal regulation, should be more conclusive. It is admitted that the judgment of a foreign municipal court, even between the same parties, where a suit is brought directly upon that judgment, is not conclusive, but only *prima facie* evidence of the indebtedness. And, surely, there can be no good reason why it should be more conclusive in a collateral action, between parties who have never appeared or submitted their rights to the decision of such foreign tribunal.

The instance court of admiralty in Antigua, which condemned the brig Francis, was not acting as a prize court under the law of nations, but merely as a municipal court, to carry into effect the British navigation laws. To show a breach of the warranty in the policy, even *prima facie,* by the decree of condemnation, it was incumbent on the insurers to prove the existence of the law alleged to have been broken. The decree of condemnation, even in prize causes, does not establish the law, but is merely the decision of the court that the facts established rendered the property a lawful prize, agreeably to the law of nations. The courts of all civilized countries will judicially take notice what that law is ; and if it appear by the proceedings in the prize court, that the condemnation was not for a breach of the law of nations, it will not be considered as binding upon the courts of other countries, upon the question of neutrality. (*Pollard* v. *Bell,* 8 *T. R.* 434.) But we cannot judicially notice the municipal laws of foreign countries ; they must be proved like other facts. In this case, if the proceedings of municipal courts

ALBANY,
Dec. 1828.

Ocean Ins. Co.
v.
Francis.

were evidence of the existence of the laws on which they purport to be founded, there was no evidence of the breach of warranty which is not completely rebutted by the testimony on the part of the assured. The libel charged that the brig, being an English vessel, had become forfeited, because she had imported goods, wares and merchandizes into the port of St. Johns, in the island of Antigua, by way of merchandize, contrary to the form of the statute ; and the judge pronounced the vessel and cargo forfeited and lost *for a breach of some or one of the laws relating to trade and navigation.*

Admitting there was a law of England subjecting the vessel and cargo to forfeiture, for the causes alleged in the libel, the evidence produced on the trial of this case showed conclusively that no such cause of forfeiture existed. The vessel was bound to the windward islands and a market. The captain testifies, that he was standing off and on the port of St. Johns, to try the market ; and that at the time of capture, the brig had not touched at any place, or broken bulk, or exchanged or delivered any thing out, or received any thing on board after leaving America.

In any view of this case, there is no legal evidence of the breach of the warranty, either as to the character of the vessel, or against seizure or detention, on account of illicit or contraband trade.

The assured, having a perfect right to abandon, in consequence of the illegal capture, the neglect of the supercargo to put in a claim did not affect the right of abandonment. (*Gardere* v. *The Columbian Ins. Co.* 7 *Johns. R.* 514.) It may have been the duty of the master, as the agent of all concerned, to take the necessary steps to prevent a condemnation by default. But under the circumstances, a sufficient excuse is shown for the omission of both the supercargo and master in not putting in a claim.

I think the decision of the supreme court was correct, and that the judgment should be affirmed.

SPENCER, Senator. The first point urged by the plaintiffs in error, that there was not sufficient preliminary proof of interest in the assured to warrant a recovery, is fully and satisfactorily

ALBANY,
Dec. 1828.

Ocean Ins. Co.
v.
Francis.

answered in the opinion of the supreme court. The testimony of Charles Francis, which is uncontradicted and unexplained, shows that the president of the Ocean Insurance Company not only absolutely refused to settle the claim in any way, but that he put that refusal upon a specific ground, viz. that the account " had been adjusted and settled by a receipt on a previous insurance." By this declaration of the authorized agent of the plaintiffs in error, the interest of the defendant in the property insured was not only admitted, but was alleged to have been recognized, and his claim satisfied. If even silence is a waiver of the necessity of producing preliminary proof, as would appear from 1 *Johns. R.* 280, surely this recognition of interest in the claimant must forever preclude the adverse party from denying it.

The second point presents an objection to the answers of Robert Garrick to the 11th and 12th interrogatories. One of the answers given by the supreme court, that the objection comes too late, and that exceptions should have been taken to the interrogatories, is not satisfactory to my mind. The practice of taking depositions by a commission, to which interrogatories are annexed, is borrowed from the equity courts. In those courts, a motion to suppress the answers to interrogatories, on objections to their form, is common, and after publication, they are referred to a master, to report upon the exceptions. (1 *Harrison,* 355.) An analogous practice in courts of law would leave the interrogatories open to exception after the testimony was taken. If exceptions are to be made to the decision of the judge who settles the interrogatories, either party must necessarily possess the right of appealing from that decision. This appeal must be determined before the deposition of the witness can be properly taken, and, consequently, the whole object of this salutary proceeding to obtain and procure testimony is effectually defeated.

A distinction is made by Lord Ellenborough, in 4 *Maule & Selwyn,* 502, between depositions taken on a bill filed to perpetuate testimony, and those taken in a cause depending in court. In the latter he remarks, that the party comes with his objection fresh at the trial. That case seems to in-

ALBANY,
Dec. 1828.

Ocean Ins. Co.
v.
Francis.

dicate the practice in England to be, to allow exceptions to interrogatories proposed in the progress of a cause, to be made when the answers are offered in evidence. Mr. Dunlap, the writer referred to by the supreme court, is not sustained by any authorities; nor do his remarks sustain the position of the court, that objections cannot be taken at the trial. In point of fact, the practice at the circuits has been, so far as I am informed, to object to a written interrogatory, at the same time, and with the like effect as to a verbal question. As well upon authority as upon the reason of the case, I think it the better practice. I think, therefore, the exception was properly taken at the trial. But the validity of the exception itself remains to be inquired into. The ground of the exception is, that in those answers Garrick testifies to a question of law, and not to a fact. The answer to the twelfth interrogatory is, that while he commanded the vessel, she was not engaged in any illicit trade with any power or powers. Here is a distinct fact asserted; and it is no more a statement of law than any other assertion which contains a legal term. How was the interrogatory to be otherwise answered than by a general negative? Was the witness to recapitulate every act which, in his view, would constitute an illicit trade, and deny each separately? With regard to the answer to this interrogatory, the objection seems to me unfounded in point of fact. The answer to the eleventh interrogatory is of a like character. "As far as his knowledge went, the voyage and the trade were fair and lawful; he knew nothing of illicit transactions on the voyage." These are facts of which he speaks distinctly and directly. Had the opposite party enquired of him whether particular transactions, specifying them, had occurred, and the witness had answered in the affirmative, or if he had himself stated any particular facts, in either case, his mere opinion of the legality of those acts would have been useless, and even impertinent. But even then the enquiry would have remained, what bearing do those answers have on the case? As testimony, none whatever; as law, they would have been ridiculous. So, in this case, the part of the answers relating to facts, is evidence; that relating to law, is blank paper,

No jury could be misled, and certainly no court could be governed by such expositions of law. This point, I think, also entirely fails.

The third objection, that there was not sufficient proof of the loss of the consular certificate to entitle the defendant in error to give parol evidence of its contents, is satisfactorily answered by the supreme court, and no addition would increase its force.

There is, however, a ground on which both the second and third points may be placed, and which goes directly to the merits of the cause. The insured is not held to specific proof that the vessel is of the character warranted. That is presumed upon the general proof; and the insurer in this as in all other cases of setting up the breach of a condition by his adversary, as a defence, must prove that breach, or, at least, must rebut the general presumption by proof on his part. (2 *Marshall*, 714. 2 *Serg. & Rawle*, 133.) Rejecting, therefore, the answers of Garrick to the 11th and 12th interrogatories, and rejecting the proof of the consular certificate, which went to show the vessel was manned by the requisite number of British seamen, still the plaintiffs in error are in no better condition. The defendant in error will have failed to prove the innocence of the voyage, and the national character of his vessel; but the plaintiffs in error will not, therefore, have established the illegality of the voyage or the breach of the warranty respecting the vessel.

The course of the argument on the part of the plaintiffs in error seems to admit the principle, that the burthen of proof lay on them; for in the fifth point they urge that the sentence of condemnation of the court at Antigua is, *prima facie*, proof that the vessel had been guilty of a violation of the British laws concerning trade and navigation. In the view which I have taken of this case, this is the point which should naturally be next considered.

It cannot be denied, that the judgment or decree of any court, having jurisdiction of the subject matter, is evidence of the grounds upon which it was rendered. The force of this evidence, whether presumptive or conclusive, it is not necessary to consider in this stage of the inquiry. But from

ALBANY,
Dec. 1828.

Ocean Ins. Co.
v.
Francis.

the terms of the proposition, two things must appear: 1. That the court had jurisdiction; 2. The grounds of the decree. I think the supreme court correct in their conclusion, that this vessel was within the jurisdiction of the court at Antigua. But I do not think the grounds of the determination appear with sufficient precision to entitle this decree to any respect or credit, as a judicial proceeding. It pronounced the Snow Francis " to be forfeited and lost for a breach of some or one of the laws relating to trade and navigation." If there were no causes set forth in the libel or other proceedings, would this general declaration amount to any more than saying that the vessel was condemned for some cause or other? and is there a tribunal in christendom that would recognize a document in such terms, as a judgment?

Nor does a reference to the libel help the alleged adjudication. The court of Antigua has not adopted the causes set forth in the libel, as the grounds of its judgment; but so. far from it, that it undertakes to set out its own grounds. But for the purpose of the argument, suppose it fairly to be inferred, because the libel is attached to this judgment, that it therefore furnishes the reasons for it, yet this palpable defect will not be supplied; for the libel, as justly remarked by the supreme court, states not only various, but inconsistent causes of condemnation; and it is wholly impossible to deduce from it, in connection with the sentence, the specific ground of condemnation. The cases cited by the counsel for the defendant in error, and which were not controverted, seem to establish beyond a doubt, that where the insurer seeks to defend himself on the ground that the vessel has been engaged in an illegal trade, and offers the sentence of a foreign court to establish the facts, that sentence must establish a violation of some precise law. Tested by this rule, the sentence in this case is on its face so defective that it is evidence of nothing.

There is another principle stated by the supreme court, and fully supported by the authorities cited, that the fact of seizure and condemnation is not alone sufficient; but that the law which is alleged to have been violated by an il-

legal trade, must be produced and proved by the insurers
relying on a sentence of condemnation. This has not been
done, and the sentence therefore establishes nothing. I for-
bear from discussing the question, whether the sentence has
or has not been successfully impeached by the facts of the
case. It is enough that it was not in itself sufficient to sus-
tain the defence of the insurers, and the plaintiff below was not
called upon to impeach it by contradicting its alleged grounds.

This view disposes of the sixth point, that there was a
breach of the warranty of the national character of the ves-
sel. The defendants below held there as they held here, in
the very terms of their proposition, the affirmative of this
question. They allege there was a breach: they have ut-
terly failed to prove it.

The fourth point now presents itself for consideration, viz.
that the assured cannot recover for an act done under the
authority of his own state. But how does it appear that the
seizure and condemnation were under the authority of the
British government? If the views taken in considering the
fifth point are correct, we are without any evidence on the
subject. We have no evidence that there was any law of the
British government prohibiting the importation of goods on
board a vessel not being wholly owned by a subject and nav-
igated by a British master, &c., which is the first ground al-
leged in the libel; nor of any law forbidding the importa-
tion of the goods specified in the second ground; nor of
any law rendering a vessel alien on account of the alleged
repairs stated in the third count; nor of any law prohibiting
the importation of the enumerated articles in the fourth count,
from the United States. Are we to be supposed acquainted
with the municipal regulations of trade established by Eng-
land, without their having been proved? In the absence,
then, of this proof, which the plaintiffs in error were incon-
testibly bound to adduce, we have no right to say that the
acts of the officers at Antigua were authorized by their own
government; on the contrary, the legal maxim that that
which is not proved does not exist, compels us to say, that
those acts were illegal and wholly unauthorized. The ques-
tion of law therefore presented by the fourth point, is whol-

ly gratuitous : it does not arise in the case ; and we might as well be called upon to decide the validity of a devise as to determine that point. Independent of the general objection to theorizing and speculating on points not in the case before us, there is peculiar satisfaction in being relieved from the investigation and decision of this point. I have looked into it sufficiently to discover that it is one of great difficulty, and in reference to which the decisions of the English courts cannot be relied upon, as well from their own contradictions, as from the peculiar political principles which control that government and its courts. It is identified with great principles of civil liberty, and with the fundamental doctrines of the reciprocal rights and duties of governments and their subjects, which have furnished themes for copious illustration by the statesmen and jurists of the world. Upon all these questions the statesmen of our own country have maintained opinions, which have been combatted by those of foreign countries, but which, I doubt not, will one day become the law of this country. At present it is as unnecessary as it would be presumptuous in me to attempt to ascertain and define the existing law, in respect to the question how far and in what cases a citizen is bound to look to his own government only for redress for injuries committed by the judicial, legislative or executive departments, within the scope of their authority.

The seventh and only remaining point, did not seem to be much pressed on the argument. It is not perceived how a failure by the agent of the assured to interpose a defence, after the loss had actually occurred, can in any way affect the claim for a total loss. The case in 7 *Johns. Rep.* 514, seems decisive against the objection. Other objections were suggested in the course of the argument, which it is not deemed necessary to notice, because they were not made at the trial, do not appear on the bill of exceptions, and related to supposed defects in testimony, which might have been supplied at the time, if the objection had been made.

I am of opinion that the judgment of the supreme court ought to be affirmed.

This being the unanimous opinion of the court, it was thereupon ORDERED and ADJUDGED that the judgment of the supreme court in this cause be affirmed, and that the plaintiffs in error pay to the defendant in error his costs and charges in and about his defence in this court to be taxed, and that the record be remitted, &c.