CHARLES W. DURANT, JR., Appellant, *v.* WILLIAM P. ABENDROTH, Impleaded, etc., Respondent.

Where at the time of the filing of the certificate and affidavit for the purpose of forming a limited partnership under the statute (1 R. S. 764, § 1. *et seq.*), the special partner had not in fact paid in the sum to be con-

tributed by him, but had given his check therefor, payable thereafter,— *held,* that although the check was duly paid, the misstatement rendered the special partner liable as a general partner for all the engagements of the firm.

But *held,* that notwithstanding such misstatement, the partnership was in form a limited partnership, and subject to all the rules applicable to such partnerships.

As to whether the special partner is a necessary party in proceedings in bankruptcy against the firm, *quære.*

Where in such proceedings the special partner was not made a party, and only the names of the general partners appeared as members of the firm, — *Held,* that a creditor of the firm was not estopped by the decree in such proceedings from setting up the liability of the special partner as a general partner because of the misstatement in the papers filed as to the payment in cash of the sum contributed by him; and this, although the creditor proved his claim against the firm and received a dividend thereon.

A judgment *in rem* of a domestic as well as a foreign court, where jurisdiction over the person of a party has not been obtained, except as to his interest in the property affected by the judgment, is not conclusive or binding upon him by way of estoppel in another action.

Certain creditors of the firm presented a petition to the register in bankruptcy, setting forth that two days before the filing of the petition in bankruptcy, certain other creditors had agreed to sell their claims to A. at twenty-five per cent, and had afterward proved their claims in bankruptcy and then assigned them to A. The petitioners asked that said claims be disallowed on the ground that A. was a special partner, and that under the statute (1 R. S. 767, § 23) no special partner could, save as excepted in the statutes, claim as creditor until the claims of all other creditors were satisfied. The register overruled the point, holding that in respect to the assigned claims, A. stood in the position of his assignors and was only a creditor as their representative. This decision was sustained by the Bankruptcy Court. *Held,* that, conceding the decision to be in effect an adjudication that A. was only a special partner, it was not binding, outside of the bankruptcy proceedings, upon creditors who were not parties to the application.

(Argued June 26, 1884 ; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of defendant, entered upon an order made May 1, 1882, which overruled plaintiff's exceptions, and directed judgment on a verdict.

The nature of the action and the material facts are stated in the opinion.

The case is reported on a former appeal in 69 N. Y. 148.

*Carlisle Norwood, Jr.,* for appellant. It is absolutely necessary for the formation of a limited partnership that the amount of capital contributed by the special partner shall have been actually paid in cash at or before the filing and record of the certificate and affidavit required by the statute. (1 R. S., part 2, chap. 4, tit. 1, p. 763, original paging, §§ 1–8; *Van Ingen* v. *Whitman,* 62 N. Y. 513; *Haviland* v. *Chace,* 39 Barb. 283; *Pierce* v. *Bryant,* 87 Mass. 91; *Lancaster* v. *Choate,* id. 530; *Haggerty* v. *Foster,* 103 Mass. 17; *Vandike* v. *Rooskam,* 67 Penn. St. 330; *Richardson* v. *Hogg,* 38 id. 153; *In re Merrill,* 12 Blatchf. 221; *Bell* v. *Merrifield,* 28 Hun, 219.) As the parties did not publish the terms, etc., six weeks immediately after the registry the partnership must be deemed general. (*Bowen* v. *Argall,* 24 Wend. 502; *Argall* v. *Smith,* 3 Den. 435.) For the false statement in the certificate and affidavit, Abendroth became liable for all the engagements of the firm to the same extent or measure that a general partner would be liable, entirely aside from the question of whether or not he was in fact or in law such general partner. (*Durant* v. *Abendroth,* 69 N. Y. 148; *Haviland* v. *Chace,* 39 Barb. 283; *Haggerty* v. *Foster,* 103 Mass. 17; *Maguire* v. *Lawrence,* 13 J. & S. 235; *Van Dolsen* v. *Abendroth,* N. Y. Daily Reg., Jan. 9, 1883; 1 City Court Rep. 469.) The jurisdiction of the Bankruptcy Court must be considered not only in reference to the record as proof, but also upon the question of its jurisdiction on the facts of the whole case. (*Thompson* v. *Whitman,* 18 Wall. 457; *Chemung Bk.* v. *Judson,* 4 Seld. 260, 261; *Elliott* v. *Pierson,* 1 Pet. 328, 340; *Starbuck* v. *Murray,* 5 Wend. 148, 150; *Dobson* v. *Pearce,* 12 N. Y. 164; *Noyes* v. *Butler,* 6 Barb. 613, 615, citing cases; *Kerr* v. *Kerr,* 41 N. Y. 275; *Ferguson* v. *Crawford,* 70 id. 253, 266–7; *Risley* v. *Phenix Bk.,* 83 id. 337; *Bolton* v. *Jacks,* 5 Robb. 198, 199; *Knowles* v. *Gas L. Co.,* 19 Wall. 58; *Addams* v. *Terrell,* 4 Fed. Rep. 796, 800; *Isett* v. *Stuart,* 80 Ill. 404; *Addams* v. *Terrell,* 4 Fed. Rep. 801; Bump on Bank. [9th ed.] 65; U. S. R. S., §§ 5014, 5021; *In re P. & H. Lewis,* 1 Nat. Bank. Reg. 239; Bump on Bank. [9th ed.] 68; Blumenstiel on

Bank. 119; *In re P. & H. Lewis*, 1 Nat. Bank. Reg. 239; *In re Beals*, 17 id. 108; *In re Plumb*, id. 76; *In re P. F. Temple*, id. 345.) If one partner proceeds in bankruptcy against his copartners the petition must aver that his copartners are unwilling to join in the proceedings and pray that the petitioner and his copartners may be adjudged bankrupts. (Bump on Bank. [9th ed.] 68; *In re Penn. et al.*, 5 Nat. Bank. Reg. 30; *In re Prankard*, 1 id. 297; *In re Pitt*, 14 id. 59; *In re Greenfield*, 5 Bend. 552; *In re Winkens*, 2 Nat. Bank. Reg. 349; *In re Shepard*, 3 id. 176; *Citizens' Nat. Bk.* v. *Cass*, 18 id. 279; *Compton* v. *Conkling*, 9 Biss. 225; *In re Gorham*, Biss. 23.) The form of the petition is of great importance. (U. S. R. S., § 4900; General Order No. 32; *In re Moore* v. *Harley*, 4 Nat. Bank. Reg. 24.) The petition can be varied only to meet the positive exigencies of any case, such as to show that one or more partners refused to join in it, but no alteration can be made except for that or a similar purpose. (Cullen's Bank. Laws, 452; Cooke's Bank. Laws, 5; Montague and Gregg's Bank. Laws, 417; *Ex parte Benfield*, 5 Ves. 163; *Ex parte Layton*, 6 id. 434; *Starbuck* v. *Murray*, 5 Wend. 158; *Dobson* v. *Pearce*, 12 N. Y. 164; *Addams* v. *Terrell* 4 Fed. Rep. 800, 801; *Risley* v. *Phenix Bk.*, 83 N. Y. 318, 337.) The principles of *res adjudicata* are only applicable as between the parties (or their privies) to the prior adjudication. (*Goddard* v. *Benson*, 15 Abb. Pr. 191; *Knauth* v. *Bassett*, 34 Barb. 31; *In re Goodfellow*, 3 Nat. Bank. Reg. 452; *In re Patterson*, 1 Ben. 508, 517.) The judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. (*Duchess of Kingston's Case*, fully reported, 20 How. St. Trials, 355; Smith's Leading Cases; *Chapman* v. *Phenix Nat. Bk.*, 12 J. & S. 340; *Webb* v. *Buckalew*, 82 N. Y. 589; *Remington Paper Co.* v. *O'Dougherty*, 81 id. 489; *Ferguson* v. *Massachusetts Ins. Co.*, 22 Hun, 320; *Millard* v. *M. K. & T. R. Co.*, 20 id. 191; *Cromwell* v. *County of Sac*, 94 U. S. 353; *Davis* v. *Brown*, id. 423; *Stark* v.

*Starr*, id. 477; *Russell* v. *Place*, id. 606; *Boyd* v. *Alabama*, id. 645; *Dunckel* v. *Wise*, 11 N. Y. 420, 426; *Kerr* v. *Hayes*, 35 id. 331, 336-7; *Mason's Ex'rs* v. *Alston*, 9 id. 28; *Vaughan* v. *O'Brien*, 57 Barb. 495; *Palmer* v. *Hussey*, 87 N. Y. 303, 306-7; *Rathbone* v. *Hooney*, 58 id. 463.) The Bankruptcy Court never adjudicated upon the question of the statutory liability of Abendroth for all the engagements of the firm, because of the false statement in the certificate and affidavit. (*In re Levy et al.*, 1 Bank. Reg. 329; *Heath* v. *Hall*, 4 Taunt. 326; *Bottomly* v. *Nuttall*, 5 C. B. [N. S.] 122-137.) Proving the debt against the two bankrupts did not merge it or destroy the rights and remedies against other parties. (*U. S.* v. *Lafferts*, 11 Pet 86, 101; *Hogendobler* v. *Lyons*, 12 Kans. 276; *In re Morse* v. *Kelly*, 5 Biss. 97; *Crompton* v. *Conkling*, 15 Nat. Bank. Reg. 417; *Citizens' Nat. Bk.* v. *Cass*, 18 id. 279; *Chitty on* Contracts; U. S. R. S., § 5105; *Smith* v. *Soldiers' Dispatch Co.*, 35 N. J. 60; *Hoyt* v. *Freel*, 8 Abb. Pr. [N. S.] 220; *Brandon M'f'g Co.* v. *Frayer*, 13 Nat. Bank. Reg. 362; *Meltzer* v. *Doll*, 91 N. Y. 373.)

*Wm. H. Arnoux* for respondent. The adjudication in bankruptcy was a judicial decree, of binding force and effect upon all the creditors of Griffith and Wundrum, and cannot be collaterally impeached. (*Clemens* v. *Clemens*, 37 N. Y. 73; *Chapman* v. *Phenix Bk.*, 85 id. 452; *Schwinger* v. *Raymond*, 83 id. 197; *Dunham* v. *Bower*, 77 id. 76, 80; *Dorrance* v. *Henderson*, 92 id. 406, 413; *Gates* v. *Preston*, 41 id. 113; *Glacius* v. *Fogel*, 88 id. 441; *Jordan* v. *Van Epps*, 85 id. 436; Bump's Bank. [9th ed.] 68; *In re Penn.*, etc., 5, Nat. Bank. Reg. 30; *In re Prankard*, 1 id. 297; *In re Pitt*, 14 id. 59; *Citizens' Nat. Bk.* v. *Cass*, 18 id. 279; U. S. R. S., § 4900; *In re Moore* v. *Harley*, 4 Nat. Bank. Reg. 242.) This judgment of the Bankruptcy Court against the two is a valid and complete bar to any action that may be brought by any creditor against the defendants, even if they have been partners. (Collyer on Part., § 756; Chitty on Pl. 50, note *u ;*

*Robertson* v. *Smith*, 18 Johns. 459 ; *In re Collier*, 12 Nat. Bank. Reg. 266 ; *U. S.* v. *Leffler*, 11 Pet. 86, 101.) The fact that there were other parties to the proceedings in bankruptcy is no objection to the application of the rule in the present case. (*Lawrence* v. *Hunt*, 10 Wend. 81 ; *Thompson* v. *Roberts*, 24 How. [U. S.] 233 ; *Dobson* v. *Pearce*, 12 N. Y. 156 ; *Lazier* v. *Wescott*, 26 id. 146 ; *Konitzky* v. *Meyer*, 49 id. 571 ; *Humpton* v. *McConnell*, 3 Wheat. 234 ; *Baxley* v. *Linch*, 16 Penn. St. 249 ; *Rollo* v. *Hackett*, 2 Bos. 579 ; *Dolan* v. *Mayor, etc.*, 62 N. Y. 472; *Flash* v. *Conn*, 109 U. S. 371, 378 ; *Burgess* v. *Seligman*, 107 id. 20, 23 ; *Gilchrist* v. *West Virginia O. & O. L. Co.*, 21 W. Va. 115, 119.) The acceptance of the dividend by Messrs. Colwell operates as an estoppel *in pais* upon them and their assigns against any contention that the judgment of the Bankruptcy Court was defective in any manner or for any cause. (*Mills* v. *Hoffman*, 92 N. Y. 181 ; *Sherman* v. *McKeon*, 38 id. 266 ; *Baker* v. *Braman*, 6 Hill, 47; *Wood* v. *Seely*, 32 N. Y. 105 ; *Haight* v. *Continental Ins. Co.*, 92 id. 51 ; *Bennett* v. *N. British Ins. Co.*, 81 id. 273 ; *Woodruff* v. *Imperial F. Ins. Co.*, 83 id. 140 ; *Van Schaick* v. *Niagara F. Ins. Co.*, 68 id. 434 ; *Cone* v. *Same*, 60 id. 619 ; affirming *S. C.*, 3 T. & C. 33 ; *People* v. *Fire Ass'n*, 92 N. Y. 326 ; *Vose* v. *Cockroft*, 44 id. 423 ; *Allen* v. *Roosevelt*, 14 Wend. 100, 103 ; *Stilwell* v. *Carpenter*, 59 N. Y. 414, 423 ; *In re Estate of Young* v. *Kicks*, 92 id. 235 ; *Dougrey* v. *Topping*, 4 Paige, 94 ; *Town* v. *Needham*, 3 id. 545 ; *Storrs* v. *Barker*, 6 Johns. Ch. 166 ; *Deford* v. *Mercer*, 24 Iowa, 118; *Pursley* v. *Hays*, 17 id. 310 ; *In re Place*, 1 Redf. 276 ; *In re Duff* v. *Wynkoop*, 74 Penn. St. 300 ; *Perry* v. *Murray*, 55 Iowa, 416.) The plea of the defendant Abendroth, that proceedings were pending in the Bankruptcy Court, to which the plaintiff's assignors were parties, was a valid plea in abatement of this present action, and, having been proved, entitled the defendant to a judgment of dismissal. (*Shellington* v. *Howland*, 53 N. Y. 371.) The decree in the United States District Court in bankruptcy is conclusive as against this plaintiff upon the nature of the partnership exist-

ing between the defendants, and as to the individuals compos-
ing the same. (*Castle* v. *Noyes*, 14 N. Y. 329; *Duchess of
Kingston's Case*, 29 How. St. Tr. 538; *Jackson, ex dem.
Genet*, v. *Wood*, 3 Wend. 27; 8 id. 9; *People, ex rel.
Reilly*, v. *Johnson*, 38 N. Y. 63; *Gates* v. *Preston*, 41 id. 113;
*Jarvis* v. *Driggs*, 69 id. 143; *Brown* v. *Mayor*, 66 id. 385,
390; *Patrick* v. *Shaffer*, 94 id. 423, 430; *Hardin* v. *Palmer-
lee*, 28 Minn. 450; *Los Angeles* v. *Melus*, 53 Cal. 16, 19;
*Marshall* v. *Stewart*, 80 Ind. 189; *Needham* v. *Bremner*, 1
C. P. 585; *Burlew* v. *Shannon*, 99 Mass. 202; *Lea* v. *Lea*,
id. 496.) The recitals in the proceedings in bankruptcy are
*prima facie* evidence of jurisdiction. (*Ferguson* v. *Craw-
ford*, 70 N. Y. 253; *Wright* v. *Nostrand*, 94 id. 31, 47.)

Rapallo, J. This action was brought against the defend-
ant Abendroth, and the defendants Griffith and Wundrum,
as copartners dealing under the firm name of Griffith & Wun-
drum, to recover a balance of account due from that firm to
Colwell & Bro., and assigned to the plaintiff.

The defendant Abendroth alone defended. He denied the
partnership as alleged in the complaint, and claimed that it
was a limited partnership, formed under the statute, in which
he was the special partner and Griffith and Wundrum were
the general partners.

This defense was met by proof that the affidavit of the gen-
eral partners filed pursuant to the statute authorizing the for-
mation of limited partnerships, so far as it averred that the
sum contributed by the special partner to the common stock
had been actually paid in cash, was untrue, such payment not
having been made in cash, but by a check payable several days
later than the date at which the affidavit was made, which mis-
statement, though the check was duly paid, was held by this
court, in the case of *Durant* v. *Abendroth* (69 N. Y. 148), to
make the special partner liable, as a general partner, for all the
engagements of the firm. (1 R. S. 763, § 8.) The personal
liability of Abendroth was thus clearly established. His main
defense now rests upon voluntary proceedings in bankruptcy in-
stituted by Wundrum against his copartner Griffith in the Dis-

trict Court of the United States, which are claimed to have had the effect of estopping the assignors of the plaintiff from setting up the liability of Abendroth as a general partner, and of an adjudication binding upon them that no such liability existed. This branch of the defense presents the only serious questions in the case.

The firm of Griffith & Wundrum failed in 1872 owing debts including the one now in controversy. On the 23d of November of that year, Wundum presented his petition to the United States District Court setting forth that he was a member of a copartnership consisting of himself and John Griffith, carrying on business in the city of New York under the firm name of Griffith & Wundrum. That the copartners were jointly and severally unable to pay their debts in full, and the petitioner desired to obtain in his own behalf and in behalf of said copartnership, the benefits of the Bankrupt Act. The petition contained the usual averments in such cases, and alleged that Griffith was unwilling to join in the petition, but made no mention of the defendant Abendroth, and he was not named in the proceedings, except that in the schedule of creditors he was stated to be one of the creditors of the firm. The assignors of the plaintiff were also named in the schedule as creditors. An order was thereupon made requiring Griffith to show cause on the 30th of November, 1872, why the prayer of the petitioner should not be granted, and on the return day of that order a decree was made adjudging that said Griffith and said Wundrum, and the firm of Griffith & Wundrum, had become bankrupt before the filing of said petition; and they were adjudged and declared bankrupts accordingly.

This adjudication is claimed, on the part of the respondent, to be a conclusive adjudication, binding upon all the creditors of the firm, to the effect that Griffith and Wundrum were the only members of the firm of Griffith & Wundrum, and consequently a bar to any claim of the assignors of the plaintiff that Abendroth was liable as a member of said firm. The contention is that the Bankrupt Act requires that all the members of a copartnership be joined, or proceeded against, to have the co-

partnership declared bankrupt, and that consequently, in adjudging the firm bankrupt, the court must necessarily have adjudged that all the members of the firm were named in the petition.

Assuming, for the purposes of the argument, the soundness of this position, the difficulty remains that a judgment operates *in personam* only upon the parties appearing before the court, or brought before it by proper process, and when this adjudication was made it was wholly *ex parte*, except as to Griffith, who was the only party cited. So far as the estate of the petitioning bankrupt is concerned the proceeding is in the nature of a proceeding *in rem*, and when the *res* is brought within the jurisdiction of the court, its adjudication is binding upon the interests of every person whomsoever in that *res*. All persons interested therein must follow it and assert their rights, or be debarred. But that is the extent to which the judgment binds those who are not personally brought before the court. If a vessel should be libeled and brought into court and the libel should name only two persons as the owners thereof, a decree in that cause adjudging that they were sole owners, would bar a creditor, for instance, claiming a lien thereon through a third part owner, from asserting such lien as against the decree, though he were not a party to the cause, and even though he had no knowledge of its pendency. To preserve his lien he must intervene and assert it. But the decree would not bar him, in an action *in personam* to recover his debt, from averring that the third person, not named in the libel, was also a part owner, or from recovering against him as such part owner. When the decree adjudging Griffith and Wundrum to be bankrupts, was made, neither Abendroth nor the assignors of the plaintiff were parties to the proceedings. It was between Griffith and Wundrum alone, and, even if the bankruptcy proceedings are treated as proceedings *in rem*, the decree was not conclusive as to any fact, in a subsequent personal controversy between Abendroth and the plaintiff or his assignors.

The general rule as to proceedings *in rem* is that when the

property is within the jurisdiction of the court pronouncing the judgment, whether a domestic or foreign tribunal, whatever the court settles as to the right or title, or whatever disposition it makes of the property, is valid in every country. (Story's Con. L., § 592; 1 Greenl. Ev. 543; *Ocean Ins. Co.* v. *Francis*, 2 Wend. 64.) But it is not universally settled that the judgment is conclusive as to the facts or allegations on which it is founded. In some of the States of the Union, and especially in the State of New York, though there are decisions to the contrary in the courts of England and in the United States courts, it has long been settled that foreign judgments *in rem* are conclusive only as to the property involved, and may be controverted as to all the grounds and incidental facts on which they profess to be founded. ( *Vanderheuvel* v. *United Ins. Co.*, 2 Johns. Cas. 451; reversing *S. C.*, id. 217.)

So the judgment, even of a neighboring State, on foreign attachment, if the defendant has not appeared and litigated, is treated as a proceeding *in rem* and not personally binding on the party, as a decree or judgment *in personam*. It only binds the property seized or attached in the suit. (1 Greenl. Ev., § 542 and cases cited; Story's Confl. L., § 549.) And it is not conclusive evidence of the debt in another suit between the same parties. (*Phelps* v. *Hooker*, 1 Dall. 261; *Betts* v. *Death,* Addis, 265.) There seems to be no reason why a judgment *in rem*, even of a domestic court, where jurisdiction over the person of a party has not been obtained, should be any more binding upon such party personally as an estoppel in another suit, than would be a judgment of a foreign tribunal, or a court of a neighboring State; and, in fact, this principle has been recognized in our own court, by holding that a judgment recovered against an absentee is binding only as to the property attached, and not upon the defendant personally; and that in the familiar case of an action for the foreclosure of a mortgage, where the mortgagor and bondsman is proceeded against as a non-resident, by publication, without personal service, though the judgment is conclusive against him as to his interest in the property, it is not conclusive upon him personally as to the

mortgage debt, and no personal judgment for a deficiency can be recovered against him.

In such cases the action is regarded, as to the absent defendant, as a proceeding *in rem* (*Schwinger* v. *Hickok*, 53 N. Y. 280), and it would be contrary to all principle to hold him personally bound, as to any fact determined in such a proceeding in his absence, so that he should be forever precluded from denying it in a subsequent litigation concerning matters other than his interest in the property affected by the judgment.

The respondent, however, relies, in addition to the decree, upon subsequent steps in the bankruptcy proceedings.

Joseph McDonald & Co., creditors of the bankrupts, in August, 1873, presented a petition to the register in bankruptcy, setting forth that on the 21st of November, 1872 (two days before the filing of the petition in bankruptcy), certain other named creditors had agreed to sell their claims to Abendroth at twenty-five cents on the dollar, and had afterward proved said debts in bankruptcy, and that such debts, so proved, had been assigned to Abendroth, and praying that said claims be disallowed, and the proofs thereof expunged, on various grounds, one of which was that Abendroth was a special partner in the bankrupt firm. The statute provides (1 R. S. 767, § 23), that in case of the insolvency or bankruptcy of the partnership, no special partner shall (except in certain specially excepted cases), under any circumstances, be allowed to claim, as a creditor, until the claims of all the other creditors of the partnership shall be satisfied. The register overruled this point, holding, that in respect to these assigned claims Abendroth stood in the shoes of his assignors and was a creditor as their representative, and not otherwise ; which ruling is in accord with the decision of this court in *Hayes* v. *Heyer* (35 N. Y. 326–330). No issue was made as to Abendroth holding any other relation to the firm than that of special partner, for the petition of the contesting creditors alleged that he was such special partner. But the respondent now claims that as McDonald & Co. might have claimed that he was a general partner, the order sustaining the decision of the register is an adjudication that he

was only a special partner, not liable as a general partner. Even if that effect could be given to the adjudication, it clearly was not binding upon the plaintiff's assignors, outside of the bankruptcy proceedings. They were not parties to the application of McDonald & Co., and had not even notice of it, for the order was made on notice only to the creditors, proofs of whose debts were sought to be expunged, and the plaintiff's assignors were not among these. It was *res inter alios acta*.

The remaining ground taken in support of the judgment is that Colwell & Co., the assignors of the plaintiff, proved their debt against the estate of the bankrupts before they assigned to the plaintiff, and received a dividend thereon for which the plaintiff allows credit in this action.

The receipt of this dividend from the estate of Griffith and Wundrum may have had the effect of precluding the creditors receiving it, or those claiming under them, from attacking the proceedings in bankruptcy ; but it surely could not have the effect of estopping them personally, in a subsequent controversy with Abendroth, as to every matter adjudicated in those proceedings, or involved in the adjudication though not litigated. Abendroth was not one of the bankrupts. His estate, even, was not affected by the adjudication of bankruptcy, except so far as his interest in the assets of the firm was concerned. The adjudications set up were not *inter partes* in so far as Abendroth and the plaintiff or his assignors are concerned. Suppose that in a suit between two partners it should be adjudged that they alone composed the firm, and a receiver of the assets of the firm should be appointed ; would the acceptance, by a firm creditor, of a dividend out of the fund in the hands of the receiver, render this adjudication conclusive upon him, and preclude him from afterward claiming a personal judgment against a dormant partner, not a party to the suit? I think not. The assets of the partnership, as well as the partners personally, are bound to the creditors, and by following these assets and participating in them, by whatever tribunal they are administered, and whether they are brought into court by all, or only a portion, of the members of the firm, it cannot

be that the creditor is precluded from pursuing his legal reme-dies *in personam* against all the partners. He is not bound, for the purpose of preserving these remedies, to relinquish his share of the assets, nor to take affirmative action to prevent their distribution.

In bankruptcy, the court has power, under the act, not only to apply the estate of the bankrupts to the payment of their debts, but also to discharge them from further liability. Whether in the present case a discharge was or was not ob-tained does not appear, and it is immaterial, for the act ex-pressly provides (U. S. R. S., § 5118) that "no discharge shall release or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, indorser, sure-ty or otherwise." Much less can the mere obtaining an ad-judication of bankruptcy and a distribution of the bankrupt's assets have that effect; even though the bankrupts, in their petition, represent themselves as the sole debtors.

In cases of limited partnership the management of the prop-erty and business of the firm is vested exclusively in the general partners, and, upon insolvency, the assets are a trust fund, directly subject, in equity, to the claims of creditors, with out first obtaining judgment at law. (*Innes* v. *Lansing*, 7 Paige, 583.) Such a partnership cannot give preferences in case of insolvency, even under the State law. (1 R. S. 766, §§ 20, 22.) It seems to have been taken for granted in this case that the special partner is not a necessary party to a proceeding to declare the firm bankrupt, and administer its assets. The general partners proceeded on that theory and brought the firm assets, and their individual property, into court. The creditors were obliged to go there to follow the fund. Notwithstanding the erroneous statement in the affidavit as to the payment of the capital, the partnership was, in form, a limited partnership, and subject to all the rules applicable to such partnerships. If it had undertaken to make an assignment with preferences, such assignment could not have been sustained on the ground of the violation of the statute. That violation could be taken advantage of only by creditors, and its consequence simply

was to give them recourse against the special partner personally, as if he had been a general partner. By resorting to the trust fund, brought into the Bankrupt Court, it cannot be that they waived or lost the recourse the statute gave them against the special partner.

It is argued that proving the debt against the estate of the general partners, and receiving a dividend thereon, were equivalent to obtaining a judgment thereon against the general partners alone, the effect of which would have been to discharge the other partner. ( *U. S.* v. *Leffler*, 11 Pet. 86, 101; *Robertson* v. *Smith*, 18 Johns. 459.) The rule, if still subsisting, that the recovery of a judgment against some of the partners of a firm, consisting of more, is a bar to a subsequent action against all the partners, would be wholly inapplicable to the present case. The reasons for that rule were, *first*, that a judgment against a portion of the partners merges the debt as to them, and thus destroys the joint indebtedness; and *second*, that there being already a judgment against some of the partners, and they being necessary parties to the second suit, a second recovery against all would result in two judgments against the same persons for the same debt. It is obvious that neither of these reasons can apply to the case of merely proving a debt against the estates of some of several joint debtors. It is worthy of note, however, that none of the cases rest upon the ground here assumed by the respondent, that recovering a judgment in an action against only two of three joint debtors, estops the creditor from afterward claiming that the third was also jointly liable for the same debt.

A point is taken in this court which does not appear to have been taken at the trial, viz.: That the right of action against Griffith & Wundrum was suspended by the pendency of the proceedings in bankruptcy. Whether or not that point is available to Abendroth, it is not material to inquire. If it had been taken at the trial, it could have been met by proof of permission of the District Court to prosecute the action, or by proof that the proceedings in bankruptcy had terminated, which is quite probable, as this action was not brought until 1876.

We have been led into this extended discussion by the earnestness with which the points made by the counsel for the defendant have been pressed, and the support which they have received in the courts below. The case is a hard one for the defendant, but, as now presented, we feel constrained to decide that the judgment must be reversed, and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.