STRANG and others, Respondents, vs. THOMAS, imp., Appellant.

*May 13—June 19, 1902.*

*Limited partnership: Failure to comply with statutes: Liability of special partners:   Transferee of interest:   Winding-up action: Judgment: Apportionment of liability.*

1. Where, in violation of sec. 1716, Stats. 1898, the business of a limited partnership is transacted by directors elected by the special partners, the latter become liable to creditors as general partners.

2. Failure of a limited partnership to put up the sign required by sec. 1713, Stats. 1898, renders the special partners liable to creditors as general partners.

3. Renewal or continuance of a limited partnership beyond the time originally fixed for its duration, without having such renewal certified, acknowledged, and recorded as required by sec. 1711, Stats. 1898, renders all the partners liable for all the debts of the original partnership.

4. One who purchased from the general partners an interest, representing a certain number of shares, in a limited partnership which had failed to conform to the requirements of secs. 1713, 1716, Stats. 1898, and who, at the expiration of the original agreement, signed an agreement for a continuance of the business for a certain time, without complying with sec. 1711, was liable as a general partner for all the debts of the company, even though he did not know the actual facts and did not intend to become a general partner; and he cannot complain of a judgment holding him liable only for a proportionate share of such debts.

5. In an action to wind up the affairs of an invalid limited partnership, a judgment apportioning the indebtedness among the solvent members according to their holdings, giving them the right to call upon the insolvent ones for contribution at any future time, is not erroneous as against one of such solvent members.

6. Judgment was properly rendered in such case against such of the members as were within the reach of the process of the court, and against members who had purchased the interests of retiring members; and the omission therefrom of those who, before any of the debts existing at suspension were contracted, had sold their interests to solvent members against whom judgment was rendered, was not erroneous

APPEAL from a judgment of the circuit court for Richland county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

In 1890 the defendants J. B. and W. Brimer owned and operated a yarn and woolen mill in the town of Orion, in Richland county. They were desirous of doing business on a more extensive scale, but, not having the capital, they solicited residents of Richland Center to join in the organization of a company. The proposition met with favor, and at a meeting held April 12, 1890, of the parties interested, articles of agreement were submitted and considered. At a later date

in the same month the agreement was entered into, and officers and directors were elected. The written articles provided that the parties should become copartners in the business of manufacturing wool into yarn and cloth. The Brimers were to be general partners, and furnish their machinery at the price of $3,500 as their share of the capital, and the others were to be special partners, contributing the sum of $4,000, each holding interests, as specified in the agreement, according to the amount each contributed. The agreement provided for the election of a superintendent, and the special partners were to elect three directors; such special partners having one vote for each $100 contributed. The agreement made provisions for the manner in which the business was to be conducted, and specified that "the division of the profits or losses in conducting the business shall be equal, and in proportion with amount of stock held by each party." It was to continue for five years. The attempt was to form a limited partnership under the statutes, but they failed to comply with several of its provisions. No sign, as required by sec. 1713, Stats. 1898, was put up, and the business was transacted largely by officers and directors elected by the members, instead of by the general partners. In January, 1891, they increased their capital to $10,000, and "shares" were thereafter issued to the members amounting to $2,300, so that the total amount paid in was $9,800. On January 22, 1891, F. P. Lawrence, who had contributed $200 to the original capital, sold his interest to the defendant A. L. Hatch. January 14, 1891, Isaac McCann sold his interest, amounting to $100, to the plaintiff *J. W. Lybrand,* and in March, 1891, Geo. Bennett sold his interest, amounting to $200, to the plaintiff *W. H. Pier.* On February 14, 1891, the Brimers transferred $1,000 of their interest to the defendant *C. G. Thomas.* At the meeting in January, 1891, it was voted to issue certificates of stock to the members for the interest each held, and certificates were so issued, including

one for $1,000 to *Thomas.* The business was conducted for
five years, but was unprofitable. The company was then
$4,000 or $5,000 in debt. All the members knew that the
business had been unprofitable, but, in hopes that it might be
made to pay, on May 1, 1895, all the members signed an
agreement to continue the business for three years. Subse-
quently, the company borrowed more money. Business was
continued for a time, and finally ceased. Attempts were
made at various times to settle the affairs of the partnership,
which failed. This action was commenced to wind up the
affairs of the company, and a receiver was appointed. All
of the creditors, and all of the original signers, and such as
subsequently came in, were made parties. The court found
the debts to be $9,787.38 and the net assets $1,843.30, the net
indebtedness being $7,944.08. He also found that the part-
nership, from the beginning, was a general one, and all the
members were liable for the indebtedness in proportion to the
interest each had in the business. The defendants J. B.
Brimer, W. Brimer, and H. T. Bailey were found to be in-
solvent. Judgment was entered against each of the other
parties interested in the concern for his proportionate share
of the debts, according to his interest therein, less the net
assets, saving, to the parties who paid, the right to enforce
contribution from the ones who were found to be insolvent.
No judgment was entered against Bennett, McCann, or
Lawrence. The amount found due from the appellant, *C. G.
Thomas,* was $1,168.20. All parties acquiesced in the judg-
ment except *Thomas,* who brings this appeal.

F. W. *Burnham,* for the appellant.

For the respondents there was a brief by *K. W. Eastland*
and *Jones & Stevens,* and oral argument by *Burr W. Jones.*

BARDEEN, J. This action is one in equity to settle up the
affairs of a defunct partnership. The original purpose evi-
dently was to form a limited partnership under the statutes,

but the scheme adopted was contrary to the statute, in that it allowed the business to be controlled by directors chosen by the limited partners. Stats. 1898, sec. 1716. The company failed to post the notice required by sec. 1713, and neglected other requirements not necessary to be mentioned. Such partnerships exist only by virtue of the statute, and unless there is substantial conformity to its requirements the special partners become liable to creditors as general partners. See *Lancaster v. Choate,* 5 Allen, 530; *Durant v. Abendroth,* 69 N. Y. 148, 97 N. Y. 132; *Waters v. Harris,* 17 N. Y. Supp. 370, 28 Abb. N. C. 192; *Vandike v. Rosskam,* 67 Pa. St. 330.

At the expiration of the time limited by the original agreement they agreed upon a renewal, but failed to comply with the requirements of sec. 1711 by failing to have such renewal certified, acknowledged, and recorded, and by failing to give the proper notice. The obligations of the parties in such case are thus stated in Troubat, Lim. Partn. § 337:

"On the renewal of a limited partnership after the expiration of the former one, or before such expiration, or upon the formation of a new partnership, special partners who carry the capital of the first concern into the newly formed one render themselves liable *in solido* for all the debts of the original partnership. And this obligation is indivisible; it involves all the partners in the same liability. It will make no difference that the capital of the prior partnership has been converted into shares destined for the second one, even with the intention to assign those shares to the creditors for the purpose of satisfying them."

But it is said the appellant did not know the actual facts, and did not intend to become a general partner. That may be granted, and still he may not escape liability. In February, 1891, he purchased from the Brimers an interest in the business, which, according to their agreement, represented ten shares in the concern. It was his duty to ascertain what he was purchasing and what obligations he assumed by

becoming a member. He held his interest until the original agreement expired. In May, 1895, with knowledge that the business had been unprofitable, he signed an agreement to continue the business for three years. The business was continued at a loss, and he now seeks to escape the responsibility of contribution because he did not intend to make himself liable. If the business had been profitable, no doubt he would have accepted his share of profits without objection, and could legally have demanded it. The situation being reversed, he must accept the consequences. All of the indebtedness found due at the final wind-up was incurred after he became a member of the company, and was incurred in a *bona fide* attempt to carry on the business to a profitable issue. Claiming, as he did, the right to a proportionate share in the profits had any been realized, he ought not to complain when called upon to share losses on the same basis. As a general partner he was liable, with the other members, for all the debts of the company; so the fact that the court only held him liable for a proportionate share is really more favorable than he was strictly entitled to.

The apportionment of indebtedness among the members who were solvent, according to their holdings, was fully justified. The creditors who were not members had a technical right to collect against any or all of the members of the company, but they are not here complaining. The judgment adjudges the equities of the members according to the original agreement, and gives the solvent ones the right to call upon the insolvent members for contribution at any future time. We do not think it open to criticism in that regard.

The appellant further complains that no judgment was given against Bennett, Lawrence, and McCann. These men signed the original agreement, but sold their interests before any of the debts that were in existence at the date of the final suspension of business had been contracted. They sold to men who are included in the list of solvent members, and

against whom judgment was rendered. Moreover, Bennett and McCann were nonresidents when the suit was begun. Judgment was properly rendered against such of the members as were within the reach of the process of the court, and against members who purchased the interests of the retiring members. We see no ground for disturbing the judgment.

*By the Court.*—The judgment is affirmed.